## JONES v. THE STATE.

CRIMINAL LAW.—*False Pretence.*—*Statute Construed.*—The *gravamen* of the crime defined by section 27, 2 G. & H. 445, consists in obtaining the signature of any person to any written instrument, or in´ obtaining from any person any money, transfer, note, bond, or receipt, or thing of value.

SAME.—The offence may be committed by two means: First. By color of any false token or writing. Second. By any false pretence.

SAME.—*Token.*—A printed business card purporting to be that of a firm, but which is not the business card of such firm, exhibited by one who claims to act as agent of such firm in making contracts, is a token or writing within the meaning of the statute.

SAME.—*Indictment.*—An indictment under such statute is not bad for using the word "pretend" instead of the word "represent."

SAME.—An indictment, charging that the defendant procured a signature to a note by false pretences used to induce the person whose signature is thus obtained to contract for the purchase of an article of property, is bad, if it does not state that the person whose name was procured relied upon such pretences as true, and upon the faith thereof purchased the property, and in consideration thereof executed the note set out in the indictment.

From the Jefferson Circuit Court.

*B. F. Davis, R. A. Black,* and *Walker & Roberts,* for appellant.

*C. A. Buskirk,* Attorney General, for the State.

BUSKIRK, J.—The appellant was indicted for, and convicted in the court below of, obtaining the signature of Jeptha O. Mayfield to a note payable to appellant, by false pretences.

A motion to quash the indictment was overruled, and an exception taken.

A plea in abatement was filed, to which a demurrer was sustained, and an exception taken.

A motion for a new trial was overruled, and an exception taken.

A motion in arrest of judgment was overruled, and an exception taken.

The errors assigned are as follows:

1. That the court erred in overruling the motion to quash the indictment.

2. That the court erred in sustaining the demurrer to the plea in abatement.

3. That the court erred in overruling the motion for a new trial.

4. That the court erred in overruling the motion in arrest of judgment.

We will dispose of these assignments of error in the order stated.    Did the court err in overruling the motion to quash the indictment?  That portion of the indictment material to this question is as follows :

"That Edwin E. Jones, on the 14th day of January, 1875, at said county of Jefferson, feloniously, designedly, and with intent to defraud one Jeptha O. Mayfield, did falsely and feloniously pretend to the said Jeptha O. Mayfield that he, the said Edwin E. Jones, was the agent of a firm of persons in the city of Cincinnati, State of Ohio, doing business under the firm name of ' Mills, Spillmeyer & Co.,' at Nos. 368, 370, and 372 West Third street, in said city of Cincinnati ; that said firm were largely engaged in the manufacture of a certain implement called ' Herman's Improved Lifting Jack,' and that he, the said Edwin E. Jones, had authority from said firm to sell said lifting jacks for the said firm, and to contract, for and in behalf of said firm, for the sale of said lifting jacks by said Jeptha O. Mayfield, and did then and there feloniously, designedly, and with intent to defraud said Jeptha O. Mayfield, exhibit to said Jeptha O. Mayfield a certain printed card purporting to be the card of said firm of Mills, Spillmeyer & Co., and which said card was and is in the words and figures following :  ' Mills, Spillmeyer & Co., manufacturers of Herman's Improved Lifting Jack, Nos. 368, 370, and 372 West Third street, Cincinnati, Ohio.   Send orders for Herman's Lifting Jack in accordance with contract ;' and did falsely, feloniously, designedly, and with intent to defraud said Jeptha O. Mayfield, pretend to said Jeptha O. Mayfield that said card was the genuine card of said firm of Mills, Spillmeyer & Co. aforesaid ; that said Jeptha O. Mayfield relied on said pretences so made to him by said Edwin E. Jones, and by means

Jones v. The State.

of said false pretences the said Edwin E. Jones did then and there feloniously, falsely, designedly, and with intent to defraud said Jeptha O. Mayfield, obtain from said Jeptha O. Mayfield a note of the said Jeptha O. Mayfield for the sum of four hundred dollars, which note is of the tenor following :

"'$400. Madison P. O., Jefferson County,
"'January 14th, 1875.

"' Six months after date, I promise to pay to the order of E. E. Jones, at the First National Bank, Indianapolis, Indiana, four hundred dollars, with interest at the rate of — per annum from date, value received, without any relief whatever from valuation or appraisement laws. The drawers and endorsers severally waive presentment for payment, protest, and notice of protest and non-payment of this note. If this note is not paid at maturity, the undersigned agree to pay the expenses of collection, including attorneys' fees.

J. O. Mayfield.

with intent then and there to cheat and defraud him, the said Jeptha O. Mayfield ; whereas, in truth and in fact, the said firm of Mills, Spillmeyer & Co. were not engaged in the manufacture of said implement called ' Herman's Improved Lifting Jack,' and whereas, in truth and in fact, said Edwin E. Jones was not then and there the agent of said firm of Mills, Spillmeyer & Co., and did not then and there have any authority from said firm to sell said lifting jacks for said firm, and to contract for the sale of the same by said Jeptha O. Mayfield for said firm, and whereas, in truth and in fact, the said card, so exhibited as aforesaid and hereinbefore set forth, was not then and there the genuine card of said firm of Mills, Spillmeyer & Co., contrary to the form of the statute," etc.

Section 27, 2 G. & H. 445, reads as follows :

" If any person, with intent to defraud another, shall designedly, by color of any false token or writing, or any false pretence, obtain the signature of any person to any written instrument, or obtain from any person any money, transfer, note, bond, or receipt, or thing of value, such person shall, upon conviction thereof, be imprisoned," etc.

The *gravamen* of the crime consists in obtaining the signature of any person to any written instrument, or in obtaining from any person any money, transfer, note, bond, or receipt, or thing of value. The offence may be committed by two means : First. By color of any false token or writing. Second. By any false pretence. The word "token," in its ordinary signification, means " a sign," " a mark," " a symbol." The words "writing" and "written" include printing, lithographing, or other mode of representing words and letters. Sec. 1, subdivision nine, 2 G. & H. 338.

The indictment in the present case attempts to charge that the signature of Mayfield was obtained to the note by means of a false token, and by pretending that he was the lawful agent of Mills, Spillmeyer & Co., and had authority from said firm to sell said lifting jack, and to contract for and in behalf of said firm for the sale of said lifting jack.

The first question is, whether the printed card set out in the indictment comes within the meaning of the words "token or writing," used in the statute.

Bouvier's Law Dictionary defines the legal meaning of the word "token" thus : "Token. A document or sign of the existence of a fact. Tokens are either public or general, or privy tokens. They are either true or false. When a token is false and indicates a general intent to defraud, and is used for that purpose, it will render the offender guilty of the crime of cheating, 12 Johns. N. Y. 292 ; but if it is a mere privy token, as counterfeiting a letter in another man's name, in order to cheat but one individual, it would not be indictable. 9 Wend. N. Y. 182 ; 1 Dall. Penn. 47 ; 2 Const. So. C. 139 ; 2 Va. Cas. 65 ; 4 Hawks No. C. 348 ; 6 Mass. 72 ; 12 Johns. N. Y. 293 ; 2 Dev. No. C. 199 ; 1 Rich. So. C. 244."

We think the token exhibited by the appellant was a general token, and indicated a general intent to defraud, and when accompanied by the false pretences alleged in the indictment, was calculated to deceive a person of ordinary intelligence and prudence.

It is very earnestly contended by counsel for appellant that

the false pretences set out in the indictment are not sufficient to constitute the crime attempted to be charged. The first objection urged to this part of the indictment is, that the word " pretended " is used instead of the word " represented." In our opinion, the objection is untenable. The word "pretence" is used in the statute defining the crime. The word "pretend" is the verb of the noun "pretence." The form of indictment given by Bicknell in his Criminal Practice, p. 341, uses the word "pretence." See Wharton Crim. Law, sec. 2144.

It is next urged that the indictment fails to aver any false pretence which was sufficient to induce a person of ordinary caution and prudence to execute his note for a large sum of money, and we are referred to the following adjudged cases : *The State* v. *Magee,* 11 Ind. 154 ; *Johnson* v. *The State,* 11 Ind. 481 ; *The State* v. *Orvis,* 13 Ind. 569.

In the first case cited, it was said : " The pretences must be of some existing fact, made for the purpose of inducing the prosecutor to part with his property, and to which a person of ordinary caution would give credit. A pretence, therefore, that a party would do an act he did not intend to do, is not within the statute; because it is a mere promise for his future conduct. Roscoe Crim. Ev. 465, *et seq.;* 11 Wend. 557 ; 14 Wend. 547 ; 3 Hill, 169 : 4 Hill, 9, 126 ; 19 Pick. 186. These authorities plainly show that any representation or assurance, in relation to a future event, may be a promise, a covenant, or a warranty, but cannot amount to a statutory false pretence."

In the second case cited, the indictment was held to be bad, because it was not averred that the checks were delivered to the prosecuting witness, and were by him received in payment for the harness. The case has but little, if any, application to the present case.

The case of *The State* v. *Orvis, supra,* is in several respects much like the present case. In that case, the indictment was held bad for the reason that it did not appear therefrom that there was any contract or agreement, between the defendant and Smith, for the purchase, by Smith, of an agency to sell

the articles mentioned, or that Smith parted with his money for the purchase of an agency to sell, or any other interest in the articles named. In other words, that no connection was shown between the pretences alleged and the obtaining of the money. In that case, the indictment, after setting forth the false pretences and negativing the averments, concluded as follows:

" By color and means of which said false pretence and pretences, he, the said Charles B. Orvis, then and there, on," etc.,. " did unlawfully, feloniously, designedly, and falsely obtain from said John F. Smith, forty dollars, then and there being the property of said John F. Smith, contrary," etc.

That portion of the indictment in the case in judgment is as follows:

"And by means of said false pretences the said Edwin E. Jones did then and there feloniously, falsely, designedly, and with intent to defraud said Jeptha O. Mayfield, obtain from said Jeptha O. Mayfield a note of the said Jeptha O. Mayfield for the sum of four hundred dollars, which note is of the tenor following," etc.

There is no averment that the said Mayfield was induced, by means of said false token and pretence, to purchase of said Jones the right to sell said lifting jack, and that in consideration of said purchase, he executed the note set out in the indictment. In other words, there is no connection shown between the false pretences alleged and the obtaining of said note. It is not shown why or upon what consideration or for what purpose the note was executed. Suppose Jones did exhibit the card of the said firm as genuine, when it was false and forged, and suppose he did pretend that he was the lawful agent of said firm and had authority to make contracts in the name and on behalf of said firm for the sale of said lifting jack, when, in truth and in fact, he was not such agent and had no authority to contract in the name and on behalf of said firm. The facts assumed to exist wholly fail to show any consideration for the note, or any reason why it was executed. The necessary connection between the false pretences alleged and the

execution of the note would have been shown by an averment that the said Mayfield, by color and means of said false pretences and in reliance upon the same as true, had been induced to purchase from the said Jones, as such agent, the right to sell said machine, for the sum of four hundred dollars, and in consideration thereof had executed the said note.

It is also claimed by counsel for appellant that the note set out in the indictment is not the one that was obtained by the false pretences alleged. The facts are these: After Jones had obtained one note from Mayfield, he went back to his house, and upon the ground that such note and contract were written in pale ink, induced Mayfield to surrender up the contract. Thereupon, a new note and contract were drawn and executed. They were the same as those surrendered, except written in different and better ink. The execution of the first note was obtained by means of the false pretences alleged, and the second by means of the first note. The point is not entitled to much consideration. There was no consideration for the second note, except that which supported the first. It was, in substance, one transaction, and the fact that the note set out in the indictment was executed a few hours after the first can not change its legal character.

We think the pretences alleged in the indictment were sufficient to deceive a person of ordinary caution and prudence. It is true, that many persons would not have been deceived thereby. They might, by reason of their long experience and greater shrewdness, have detected the fraud, or, having their suspicions excited, they would have communicated to the firm in Cincinnati. But laws are not made for the protection of the shrewd and vigilant business man only, but for the entire community. In the enactment of criminal laws, the legislature adopts, as a standard of intelligence, neither the highest nor the lowest, but the medium. The law only requires the exercise of ordinary caution and prudence. Business could not be transacted without placing confidence in the representations of persons engaged therein. While the law does not encourage blind confidence, it does not expect those engaged in the ordi-

nary affairs of life to possess the shrewdness and cunning of the practised detective. The question, therefore, is, in such a case as the present, what would a man of ordinary intelligence and caution have done under the facts and circumstances surrounding this transaction? Would such a man have believed and acted upon such pretences? If he would, the case is made out.

For the failure to allege that Mayfield relied upon such pretences as true, and upon the faith thereof purchased from Jones the right to sell such "lifting jack," and in consideration thereof executed the note set out in the indictment, we must hold the indictment bad.

The judgment is reversed, and the cause remanded, with directions to the court below to sustain the motion to quash the indictment. The clerk will give the proper order for the return of the prisoner to the jail of Jefferson county.