Argued December 18, 1895; decided January 13, 1896.

## STATE v. HANSCOM.
[43 Pac. 167.]

1. INDICTMENT — CODE, § 1777 — FALSE PRETENSES.— An indictment under Hill's Code, § 1777, for obtaining a signature by false pretenses, alleging that defendant represented to the members of a given firm that he was an agent of a specified corporation, authorized to draw a draft on it for a specified amount, and exhibited to them a false telegram by means of which he procured the firm to indorse a draft for the specified amount, sufficiently shows that the indorsement was obtained for the accommodation of the corporation, and not of the defendant.

2. SECONDARY EVIDENCE — INDICTMENT.— Where an indictment set out the substance of a false telegram used in the commission of a crime which defendant retained, it was proper to admit secondary evidence of the contents of the telegram without giving defendant notice to produce it.

3. CRIMINAL EVIDENCE — FALSE PRETENSES.— Evidence that defendant, charged with obtaining a signature to a draft by false pretenses, received the money on such draft, is admissible to show an implied delivery to him of the draft.

4. FALSE PRETENSES — IMMATERIAL EVIDENCE.— On the trial of one charged with obtaining a signature to a draft by falsely representing that it was for the accommodation of a certain corporation, it is immaterial whether defendant had money due him from the corporation or not.

5. ERRONEOUS INSTRUCTION — FALSE PRETENSES.— An instruction that an agent is not supposed to exceed his authority, and cannot bind his principal if he exceeds his authority, is reversible error on a trial for obtaining a signature to a draft by falsely pretending that it was for the accommodation of the principal, as it gives the impression that defendant would be criminally responsible if he exceeded his authority, however innocently.

APPEAL from Multnomah: T. A. STEPHENS, Judge.

The defendant F. A. Hanscom was indicted, tried, and convicted of the crime of obtaining the signature of another to a writing, the false making whereof would be punishable as forgery, and sentenced to the penitentiary for the term of eighteen months. From

this judgment he appeals, assigning as errors the action of the trial court in overruling his demurrer to the indictment, admitting incompetent and rejecting material testimony, refusing to instruct the jury to acquit, and in giving certain instructions. The indictment charges, in substance, that the defendant, with intent to defraud, represented to the members of the firm of Woodard, Clarke and Company that he was an agent of the El Montecito Manufacturing Company, a corporation existing under the laws of California, and had authority to draw a draft or bill of exchange upon it for one hundred and fifty dollars, and exhibited to them a false telegram, purporting to have been sent from Santa Barbara, California, in the usual course of business of the telegraph company, to the defendant at Portland, Oregon, by one W. P. Gould, president of said corporation, instructing the defendant to "proceed to Chicago; draw for necessary funds through Woodard, Clarke and Company," and that, by means of said false representations and false token, the defendant, with intent to defraud, obtained the signature of Woodard, Clarke and Company, who, relying thereon, indorsed their firm name upon a written instrument, of which the following is a copy, to wit:—

"$150.00.        PORTLAND, OREGON, August 26, 1895.

"At sight pay to the order of Woodard, Clarke and Company one hundred and fifty dollars, value received, and charge the same to the account of

"FRANK A. HANSCOM.

"To El Montecito Manufacturing Company, Santa Barbara, (Santa Barbara County National Bank,) California."

The indictment then negatives said representations and token, and alleges that the indorsement was obtained contrary to the statute, etc.      REVERSED.

For appellant there was a brief and an oral argument by *Mr. John C. Leasure.*

For the state there were briefs and oral arguments by *Messrs. Cicero M. Idleman,* attorney-general, and *Wilson T. Hume,* district attorney.

Opinion by MR. JUSTICE MOORE.

1. The defendant's first contention proceeds upon the theory that, the bill of exchange having been drawn to the order of Woodard, Clarke and Company, it must be presumed to have been executed by the defendant in payment of his preexisting debt to them, and that they indorsed it for value, and the failure to allege that Woodard, Clarke and Company indorsed it for the defendant's accommodation renders the indictment fatally defective, wherefore the court erred in overruling his demurrer thereto. In support of this proposition the defendant cites the case of *People v. Chapman,* 4 Parker's Crim. Rep. 56, which shows that Chapman executed a promissory note for one thousand dollars, payable to the order of one Boardman, and by falsely representing that he owned a large quantity of barley and oats, and was able to pay every dollar he owed, induced Boardman to indorse it for his accommodation. The defendant having been arraigned upon an indictment which charged the commission of the offense in a manner similar to the indictment in the case at bar, demurred thereto, and it was held, upon appeal, that the failure to allege that the indorsement was obtained for the defendant's accommodation ren-

dered the indictment defective. Welles, J., in deciding the case, says: "Unless, therefore, it sufficiently appears by proper averments that the note was made by the defendant for his own benefit, and that he obtained the indorsement of Boardman with intent afterwards to negotiate it on his own account, and that Boardman, after indorsing the note, delivered it to the defendant, and that the defendant received it for that purpose,— in other words, that it was an accommodation indorsement,— the case made by the indictment is that Boardman, having taken the note in question, payable to his own order, for a debt due to himself from the defendant, was induced by the representations set forth, to indorse and deliver it back to Chapman." The promissory note in that case was executed by Chapman, and made payable to the order of Boardman, who, by reason of the false representations, must have relied upon the maker's responsibility and indorsed the note solely for Chapman's accommodation. There were two parties only to that contract, and when Boardman delivered the note to Chapman he knew that the indorsement was made for the maker's accommodation.

"The theory of a bill of exchange," says Mr. Daniel, in his work on Negotiable Instruments, § 17, "is that the bill is an assignment to the payee of a debt due from the acceptor to the drawer; and it is undoubtedly true that the payee has a right to suppose that the drawee has funds of the drawer, upon the faith of which understanding he receives the bill directing them to be paid to him." It will be presumed that a bill of exchange was given or indorsed for a sufficient consideration: Hill's Code, § 776, subdivision 21. While a bill of exchange may have been received by the payee in liquidation of the drawer's

antecedent debt, we cannot think that it should be so presumed, for the use it subserves is not so much the payment of a debt as to facilitate exchange and avoid the transmission of money from one place to another: 1 Daniel on Negotiable Instruments, § 4. But, conceding that the presumption of the payment of an antecedent debt prevails upon proof of the execution of a bill of exchange, we think the allegations of the indictment rebut such presumption, and show that the indorsement of Woodard, Clarke and Company was not made for the defendant's accommodation. In the case at bar there were three parties to the contract, and the indictment alleges that Woodard, Clarke and Company relied upon the faith of the supposed telegram and the representations of the defendant, and these negative any presumption that they indorsed the bill of exchange for the defendant's accommodation. They did not rely upon the defendant's responsibility, but upon that of the El Montecito Manufacturing Company, for whose accommodation they indorsed the instrument, and delivered it to the defendant, supposing the contract was entered into with his principal. The indictment is based upon an alleged violation of section 1777 of the statute which provides that "If any person shall, by any false pretenses or by any privy or false token, and with intent to defraud, obtain, or attempt to obtain, from any other person, any money or property whatever, or shall obtain or attempt to obtain with the like intent the signature of any person to any writing the false making whereof would be punishable as forgery, such person, upon conviction thereof, shall be punished," etc. If an indictment be direct and certain as to the party charged, and the crime alleged to have been committed, and states the particular circumstances of the offense in ordinary and

concise language, and in such a way that a person of ordinary understanding can know what was intended, it is sufficient: *People* v. *Saviers,* 14 Cal. 29. In speaking of the sufficiency of an indictment, SAVAGE, C. J., in *People* v. *Herrick,* 13 Wend. 91, says: "It must be remembered, however, that the object of all specification in indictments is to apprise the defendant of what he is to meet upon the trial, and that certainty to a common intent is all that can reasonably be required." Based upon these rules we think the indictment shows that the indorsement was not obtained for the defendant's accommodation, and sufficiently notified him of what he was expected to meet upon his trial, and hence there was no error in overruling the demurrer.

2. It is contended that the court, without notice to the defendant to produce the original false telegram, erroneously admitted, over the defendant's objection, secondary evidence of its contents. The bill of exceptions shows that William F. Woodard, being called as a witness for the state, testified, in substance, that on August twenty-sixth, eighteen hundred and ninety-five, the defendant called at the store of Woodard, Clarke and Company, and obtained a telegram that had been delivered at their place of business by a messenger for him; that he opened the message, read it in the hearing of the witness, and retained it; that the witness had made an ineffectual attempt to obtain the dispatch, and did not know what had become of it. He was then permitted to give from memory, over the defendant's objection and exception, the language of the message. When a written instrument is in or traced to the possession of the opposing party, it is necessary to give such party notice and a reasonable time before the trial within which to produce it, be-

fore secondary evidence of its contents can be received; but this rule does not require that notice should be given to produce documents which are the subject of the indictment: Wharton's Criminal Evidence (9th ed.), § 212. "It is well settled in criminal cases," says ELLIOTT, C. J., in *McGinnis* v. *State,* 24 Ind. 500, "that the court cannot compel the defendant to produce an instrument in writing, in his possession, to be used in evidence against him, as to do so would be to compel the defendant to furnish evidence against himself, which the law prohibits. And it is also evident, where the instrument in writing is the subject of the prosecution, and is described in the indictment in such a manner as to give the defendant an advantage on the trial by producing it, that he will do so. The description of the instrument in the indictment must be such that it would always serve to notify the defendant of the nature of the charge against him, save him from surprise, and enable him to be prepared to produce the writing when it was his interest to produce it. But when its production would be likely to work an injury to the defendant by aiding in his conviction, it could not be expected that he would produce it in response to the notice. It is, therefore, difficult to perceive what benefit could result, either to the state or the defendant, from the giving of such a notice, while to the defendant it is liable to work a positive injury, by producing an unfavorable impression against him in the minds of the jury, upon his refusal to produce it after notice." In the case at bar the gravamen of the charge is the allegation that the defendant, by means of false representations and a false and forged telegram,—the substance of which is set out in the indictment,—and with intent to defraud, obtained the signature of

Woodard, Clarke and Company to a bill of exchange, a copy of which is also set out therein. The statute makes the offense equivalent to forgery when the instrument to which the signature has been obtained purports to be of or represents value. "This statute," says BRONSON, J., in *People* v. *Galloway*, 17 Wend. 540, in construing the words of a similar section, "like that against forgery, was made to protect men in the enjoyment of their property, and if the instrument obtained can by no possibility prejudice any one in relation to his estate, it will not be an offense within the statute. If the rule were otherwise, a man might be punished criminally for obtaining the signature of an other to an idle letter, or any other writing of no importance." The indictment having set out a copy of the bill of exchange, there can be no doubt of the state's right to introduce secondary evidence of its contents, without notice to the defendant, if unable to procure the original. The right to offer secondary evidence in such cases proceeds upon the theory that, the indictment having set out a copy of the forged or stolen instrument, the defendant has notice of what he may be expected to meet upon his trial, and hence another notice to produce the writing is unnecessary. The indictment in this case having set out the alleged false telegram, in substance, the defendant was thereby notified of what the state expected to prove. This being so, secondary evidence of its contents, without additional notice, infringed no substantial right of the defendant, while the proof of a notice to produce a written instrument and his failure or refusal to comply therewith might have prejudiced his interests in the minds of the jury. If the indictment, however, had not set out what purported to be a copy of the alleged telegram, notice to the defendant and a reason-

able time before the trial to produce it would have been necessary before secondary evidence of its contents could have been admitted. The telegram was so intimately connected with the offense charged in the indictment, and the execution of the bill of exchange so dependent upon the alleged false token, that we think there was no error in admitting secondary evidence of its contents without notice to the defendant to produce the original.

3. It is contended that the court erred in the admission of evidence tending to show that the defendant, after having obtained the indorsement of the bill of exchange, secured the money thereon. The evidence of Mr. Woodard shows that he went to the bank with the defendant, who drew the instrument, and the witness indorsed the firm name thereon; but he could not state whether it was delivered to the defendant or to an officer of the bank, nor whether the money was paid by him or such officer to the defendant. His evidence further shows that the defendant received the money at the bank; that the bill of exchange was not accepted by the El Montecito Manufacturing Company, but was protested on account thereof, and that his firm was compelled to repay the bank. The crime alleged in the indictment is that the defendant, by means of false representations and a false token, and with intent to defraud, obtained the signature of Woodard, Clarke and Company to a writing which was or might become prejudicial in relation to their estate. In *People* v. *Stone*, 9 Wend. 180, SUTHERLAND, J., in construing a statute similar to section 1777 of our Code, says: "Under this statute, the offense is complete when the signature is obtained, if it were obtained by false pretenses and with a fraudulent intent, although

it may never be used to the prejudice of any person."
This doctrine was affirmed in *People* v. *Genung,* 11 Wend.
18, the court saying: "The offense is complete when
the signature is obtained by false pretenses, with in-
tent to cheat or defraud another.  It is not essential
to the offense that actual loss or injury should be sus-
tained."  The bill of exchange upon its face expressed
a money value, the false making whereof would have
been forgery, and the crime was therefore committed
if the defendant, with intent to defraud, and by means
of the alleged false token and false representations,
obtained the signature of Mr. Woodard, who, relying
thereon, indorsed the instrument; and hence it is im-
material whether the money was paid to the defend-
ant upon it, except so far as to show a delivery of the
bill of exchange to him.  The indictment having stated
that the defendant "obtained" the signature, was equiv-
alent to an allegation that the instrument had been
indorsed and delivered to him, and proof of this alle-
gation was necessary to support a conviction.  Mr.
Woodard testified that he indorsed the bill of ex-
change, and thinks he delivered it to the defendant,
but is not positive about the matter, and cannot state
whether he or the defendant presented it to the bank.
The indorsement which gave a commercial value to
the instrument having been obtained, we think it is
immaterial whether the defendant or Mr. Woodard
presented it to the bank, and the evidence that the de-
fendant obtained the money thereon becomes material
only to show an implied delivery, for if it be conceded
that the bill of exchange was delivered to the bank
by the witness, and that the money drawn thereon
was paid by him to the defendant, it would show that
Woodard was acting in the presence of the defendant
as his agent, and hence the receipt of the money by

the defendant, being a part of the transaction, shows an implied delivery of the instrument. But, as the offense charged consisted in the unlawfully obtaining of a signature to a written instrument representing value which might prejudice the indorsers thereof in respect to their estate, it was certainly immaterial whether they had paid the money back to the bank.

4. It is contended that the court erred in its refusal to allow the witness T. B. Izard, the manager and secretary of the El Montecito Manufacturing Company, to answer any questions tending to show what amount of money, if any, was due the defendant from said corporation at the time the bill of exchange was drawn by him. This witness having been called by the state, stated on cross-examination that the defendant at the time he drew the bill of exchange was in the employ of said corporation as a salesman at a salary of seventy-five dollars per month, whereupon the witness was asked: "On the twenty-sixth of August how much was due him upon salary?" An objection to the question having been sustained, the following was asked: "Was there any money due from El Montecito Manufacturing Company to the defendant, F. A. Hanscom, on the twenty-sixth day of August, eighteen hundred and ninety-five, on the day that this draft was drawn?" to which the court also sustained an objection. These questions could become material only upon the theory that the indorsement was obtained for the defendant's accommodation. If the defendant had represented to Woodard, Clarke and Company that he had money on deposit with or due him from said corporation, and they, relying thereon, had indorsed for his accommodation, the questions asked by defendant's counsel would have been vital;

but the indorsers, by means of the alleged telegram and the defendant's representations, relied upon the responsibility of the El Montecito Manufacturing Company, for whose accommodation they indorsed the instrument, and hence we fail to see how evidence of any money the defendant had on deposit with or due him.from said corporation could be material.

5.  It is also contended that the court erred in its instruction, and particularly in answer to a question from one of the jurors.  After the court had instructed the jury upon all the issues pertinent to the case, one of the jurors asked the following question: "Could I ask your honor to give us the law in regard to the responsibility of an employer for the acts of his agent?  Would that apply in this case?" to which the court answered: "An agent is not supposed to exceed his authority.  He cannot bind his company if he exceeds the instructions that are given him, or the authority vested in him."  We think this answer misleading for two reasons: 1. The principal is often bound by the act of his agent in excess or abuse of his actual authority, but this is only true between the principal and third persons, who believing and having a right to believe that the agent was acting within and not exceeding his authority, would sustain loss if the act was not considered that of the principal: *Walsh* v. *Hartford Fire Insurance Company,* 73 N. Y. 5. 2. It seems to leave the impression that the defendant would be criminally responsible if he, however innocently, exceeded his authority in the smallest particular.  This being so we consider the remark of the court erroneous.

6.  It is insisted that the court erred in overruling the defendant's motion, made after the state had

rested, to instruct the jury to return a verdict of acquittal. The bill of exceptions contains all the evidence given at the trial, and hence an examination of this question becomes necessary. Evidence was introduced tending to establish all the elements of the offense, but upon the falsity of the alleged telegram it is somewhat obscure. R. L. Brocklett, being called as a witness for the state, testified, in substance, that he was bookkeeper and telegraph operator of the Postal Telegraph Company at its office at Portland, Oregon; that on August twenty-fourth last he, as the operator, received a telegram from Oakland, California, to F. A. Hanscom, which was delivered to Woodard, Clarke and Company, and produced an office copy thereof as follows:—

"Office No. 92.

"OAKLAND, CALIFORNIA, August 24, 1895.

"*To F. A. Hanscom, care of Woodard, Clarke and Company, Portland, Oregon*—Go to Chicago; draw on us funds Woodard, Clarke and Company.

"W. P. GOULD."

The witness Izard testified, in substance, that he knew W. P. Gould, who was the president of the El Montecito Manufacturing Company; that Gould was at Santa Barbara, California, between the twenty-fourth and twenty-seventh of August last; that the Postal Telegraph Company had no office at that city, but the Western Union maintained one there. It is possible that Gould may have been at Oakland, California, on August twenty-fourth, eighteen hundred and ninety-five, and at Santa Barbara between that date and the twenty-seventh of said month, or that he may have ordered some one at Oakland to send the message in his name; but as the state had alleged and relied

upon the defendant's false representations as well as upon the alleged false token, we think there was no error in denying the motion. For the error noted above the case must be retried.          REVERSED.

Decided December 9, 1895.