Argued Jan. 9, decided Jan. 28, rehearing denied Feb. 25, 1913.

## STATE v. WHITEAKER.

(129 Pac. 534.)

**False Pretenses—Obtaining Signatures to Written Instruments —Elements of Offense.**

1. Section 1964, L. O. L., makes it an offense to obtain money or property "by any false pretenses, or by any privy or false token, and with intent to defraud," or by obtaining the signature of any person to a writing with like intent, the false making of which would be punishable as forgery. Section 1541 provides that "upon a trial for having, by any false pretense, obtained the signature of any person to any written instrument, or obtained from any person any valuable thing, no evidence can be admitted of a false pretense expressed orally and un-accompanied by a false token or writing; but such pretense, or some note or memorandum thereof, must be in writing, and either subscribed by or in the handwriting of the defendant." Held, that if the false pretenses are expressed orally they must be accompanied by a false token or writing, and if not so accompanied the false pretense, or some note or memorandum thereof, must be in writing, signed by or in the handwriting of defendant; the latter clause of Section 1541 not referring to a false pretense expressed orally and accompanied by a false token.

**False Pretenses— "False Tokens"— "False Writings"— What Constitutes.**

2. "False token or writing," within the meaning of Section 1541, L. O. L., has reference to something real, visible, and substantial, or some writing purporting to be the act of some person, and so framed as to have more weight and influence in effecting the fraud than the mere assertion of the party defrauding; but such writing need not be subscribed by or in the handwriting of the defendant.

**False Pretenses—False "Tokens."**

3. In a prosecution for falsely pretending that land contained valuable oil deposits, whereby prosecutor was induced to execute a deed for land in payment for stocks of an oil company which, it was claimed, owned the land, a prospectus of the company describing the property in question, as well as a bottle of oil labeled "Taken From Our Property," were proper exhibits

to go to the jury as tokens, within the contemplation of Sections 1541, 1964, L. O. L.

**Criminal Law—False Pretenses—Evidence—Continuing Offenses.**

4. Under an indictment charging that on a certain date the defendant made false representations and obtained a signature by false pretenses, etc., it was proper to admit evidence of representations made before that date, such as the issuing of an untrue prospectus and representations made during the negotiations.

**False Pretenses—Admission of Evidence—Intent.**

5. The admission in evidence of statements of one charged with obtaining a signature by means of false pretenses, after the transaction, was proper to show previous intent.

From Multnomah: ROBERT G. MORROW, Judge.

Statement by MR. JUSTICE EAKIN.

The defendant, W. H. Whiteaker, was jointly indicted with four others, charged with the crime of obtaining the signature of a person by means of false pretenses, in that on December 10, 1910, they made representations to Mrs. Emma A. Smith that the Lake Oil, Gas & Pipe Line Company, a corporation, hereinafter referred to as the company, was the owner of and had legal title to 800 acres of land in California, upon which paraffin oil had been discovered, and that the land was very valuable, being worth $500,000, and exhibited bottles of oil said to have been taken from a hole on said land, and made many other representations in relation thereto, which representations, as alleged, were false and untrue, and well known to defendant to be so false and untrue, and were made to Mrs. Smith with intent to injure and defraud her and feloniously obtain her signature to a writing, namely, a warranty deed, conveying to the defendant 91.8 acres of land in which she owned an undivided half interest; that Mrs. Smith was ignorant of the facts, and believed and relied upon the representations so made, and was thereby induced to and did sign

the said deed. The defendant pleaded not guilty to the indictment, and was given a separate trial upon his demand therefor. The jury found him guilty, and judgment was rendered thereon, from which he appeals.

AFFIRMED.

For appellant there was a brief over the names of *Messrs. Manning & White, Messrs. McAllister & Upton,* with oral arguments by *Mr. Samuel White* and *Mr. J. B. Upton.*

For the State there was a brief over the names of *Mr. George J. Cameron,* District Attorney, and *Mr. Joseph H. Page,* Deputy District Attorney, with an oral argument by *Mr. Page.*

MR. JUSTICE EAKIN delivered the opinion of the court.

The first and most important question involved on this appeal is based on defendant's contention that the false pretenses must be in writing, and either subscribed by or in the handwriting of the defendant, and that the pretenses upon which the State relies were not of such character. The statute under which the charge is made is Section 1964, L. O. L., which reads:

"If any person shall, by any false pretenses or by any privy or false token, and with intent to defraud, obtain or attempt to obtain from any other person any money or property whatever, or shall obtain or attempt to obtain with the like intent the signature of any person to any writing the false making whereof would be punishable as forgery, such person, upon conviction," etc.

Section 1541, L. O. L., prescribes what evidence shall be requisite as proof of said crime, providing:

"Upon a trial for having, by any false pretense, obtained the signature of any person to any written instrument, or obtained from any person any valuable thing, no evidence can be admitted of a false pretense expressed orally and unaccompanied by a false token or writing; but such pretense, or some note or memorandum there-

of, must be in writing, and either subscribed by or in the handwriting of the defendant. * * "

Aside from the oral statements of the defendant, the principal representation relied upon by the State is a prospectus prepared and printed by defendant and his co-conspirators, and purporting to have been issued by the company, which said prospectus was offered for inspection to Mrs. Smith. It is headed in large capital letters:

> "ANOTHER GREAT OPPORTUNITY IN OIL ENTERPRISE
>
> "LAKE OIL, GAS AND PIPE LINE COMPANY
> "Incorporated September 10, 1910.
> "Authorized Capital Stock $500,000 * *
>
> "THE GREATEST PARAFFIN OIL IN THE WORLD IS
> FOUND ON OUR PROPERTY"

This prospectus contains pictures of a gushing well, of derricks and wells, of parties on the surface of the ground dipping oil from a hole, of the ground where the timber has been killed by oil forced to the surface, and of a basin or hole said to have been caused by a blow-out of gas. Also it makes the statement that the company owns 800 acres of land, which includes some of the best located and most valuable oil land in California, being considered absolutely proven oil land, where discoveries have already been made, and that the entire property is owned outright. The land is described therein by legal subdivisions. Upon the prospectus the company's name and office number are affixed at the bottom of the first and of the last pages, and on the first page is printed in capital letters the name of W. H. Whiteaker, president, and the names of the other officers and directors of the company. Defendant's name is also affixed to the description of the picture showing the timber killed by the exuding oil. There were exhibited to Mrs. Smith a small vial of oil labeled "Oil Taken From Holes Dug at Three Feet in Depth From Our Property in Califor-

nia," and a large bottle of similar oil, taken at the same time and place, namely, at the hole pictured on page 4 of the prospectus; also fossils, pieces of shale, and sugar sand, represented to have been taken from the said land. Many oral statements and representations were made by defendant in connection with and of the same tenor as the prospectus, a number of which were made before the company was incorporated, with a view to induce Mrs. Smith to locate claims adjacent to said land, which she and her friends did. The testimony tends to show that later defendant asked Mrs. Smith to buy stock in the company, but she said that she was not able to take any at that time. Afterwards, she and her daughter being the owners of 91.8 acres of land in Multnomah County, which she was desirous of selling, defendant offered to buy it if she would take as part payment stock in the company; and relying upon the said representations of defendant in relation thereto, and without knowledge of their falsity, she agreed to sell the land to the defendant and accept as part payment 7,950 shares of stock in the company at the value of $1.00 a share, and was induced to and did sign the deed conveying the same to the defendant by reason of said representations and relying upon the same as being true. These negotiations continued for a period of over three weeks, and were finally consummated, through Mr. Cornelius, on December 10, 1910.

We think the testimony tended to establish that the representations were made by defendant, and that many of them, as well as the statements contained in the prospectus and the source of the samples of oil, were false, and did induce Mrs. Smith to sign the said deed, and were sufficient to be submitted to the jury upon those questions, if the proof comes within the requirements of Section 1541, L. O. L., namely, if the false pretenses were accompanied by a false token or writing.

1. There are two ways in which the crime defined by Section 1964, L. O. L., may be accomplished: By false pretense, or by a privy or false token. Section 1541 distinguishes the evidence essential in establishing each: If the false pretenses are expressed orally, they must be accompanied by a false token or writing; if not accompanied by a false token or writing, then the false pretense, or some note or memorandum thereof, must be in writing, signed by or in the handwriting of defendant. The meaning of Section 1541, L. O. L., is not rendered obscure or doubtful by the latter clause. That clause cannot be held to refer to à false pretense expressed orally and accompanied by a false token or writing. At common law cheats or frauds accomplished by means of false tokens were indictable only when the false token was of a public nature; but St. 33, Henry VIII, c. 1, created it an offense to obtain any money or goods by color of any false privy, token, or counterfeit letter. Our statute (Section 1964) has defined the crime of obtaining goods by false pretenses, and is a modification of St. 33, Henry VIII, c. 1, and by the words "false token or writing" includes not only the counterfeit letter of that statute, but any false writing that would tend to effect a fraud.

2. As said in *People* v. *Gates,* 13 Wend. (N. Y.), 311, 320, the token "must be something real, visible, and substantial. * * The word 'false writing' must mean some writing or instrument purporting to be the act of some person, and so framed as to have more weight and influence in effecting the fraud than the mere assertion of the party defrauding." .The Indiana statute involved in the case of *Jones* v. *State,* 50 Ind. 473, 475, provides:

"If any person, with intent to defraud another, shall designedly, by color of any false token or writing, or any false pretense, obtain * * " etc.

The opinion says that "the offense may be committed by two means: First, by color of any false token or

writing; second, by any false pretense." In substance that is the language of our statute, and Section 1541, L. O. L., must be construed with reference to those two methods of violating it, namely, by false token or writing, and by the false pretense. The latter only must be in writing, and subscribed by or in the hand-writing of the defendant, and relates to false representations made by the defendant without the false token or writing; the former, the false token or writing, refers to something real, visible, and substantial, or some writing purporting to be the act of some person, and so framed as to have more weight and influence in effecting the fraud than the mere assertion of the party defrauding. The latter need not be subscribed by or in the hand-writing of the defendant. The courts and some of the text-writers use the term "token" as referring to anything that is meant by or included in the term "token or writing." In *State* v. *Renick,* 33 Or. 584, 590 (56 Pac. 275, 277: 44 L. R. A. 266, 268: 72 Am. St. Rep. 758), a false token is held to be a false mark or sign, forged object, counterfeit letter, key, ring, etc., used to deceive. Black's Law Dictionary defines it as:

"A sign or mark; a material evidence of the existence of a fact. Thus, cheating by 'false tokens' implies the use of fabricated or deceitfully contrived material objects to assist the person's own fraud and falsehood in accomplishing the cheat."

In *State* v. *Hanscom,* 28 Or. 427, 439 (43 Pac. 167, 171), a false telegram, neither signed by nor in the hand-writing of the defendant, was held to be a false token. And in *Wagoner* v. *State,* 90 Ind. 504, a false order for the payment of money is held to be a false token. The same principle is announced in *Jones* v. *State,* 50 Ind. 473, 475, where a false business card is held to be a false token. It is said in that case, in construing the Indiana statute above mentioned: "The gravamen of the crime consists in obtaining the signature of any per-

son to any written instrument, or in obtaining from any person any money, transfer, note, bond, or receipt, or anything of value. The offense may be committed by two means: First, by color of any false token or writing; second, by any false pretense. The word 'token,' in its ordinary signification, means 'a sign,' 'a mark,' 'a symbol.' The words 'writing' and 'written' include printing, lithographing, or other mode of representing words and letters. * * The first question is whether the printed card set out in the indictment comes within the meaning of the words 'token or writing,' used in the statute. Bouvier's Law Dictionary defines the legal meaning of the word 'token' thus: 'Token. A document or sign of the existence of a fact.' Tokens are either public or general, or privy tokens. They are either true or false. When a token is false and indicates a general intent to defraud, and is used for that purpose, it will render the offender guilty of the crime of cheating." To the same effect is 2 Russell, Crimes, p. 613; Burrill's Law Dict., title "False Token"; *Lesser* v. *People,* 73 N. Y. 78. Abbott's Law Dictionary defines "token" as:

"A material, visible sign of the existence of a fact. Thus, cheating by false tokens is perpetrating a fraud by employment of some material device, some cunningly devised false thing, in corroboration of one's lying representations. Token, as used in a statute punishing false pretenses, signifies 'a sign,' 'a mark,' 'a symbol.' And the term 'written token' will include matters printed or lithographed."

3. Not only the prospectus, but the bottle of oil labeled as "taken from our property," was a proper exhibit to go to the jury as a token, in connection with the prospectus, for it to find whether they were false and gave credit to defendant's statements, or were sufficient to induce a person of ordinary caution and prudence to act upon them.

4, 5.  It is contended by defendant that the court erred in admitting evidence of representations made to Mrs. Smith prior to December 10, 1910.  After the time of the formation of the company all acts and representations by the defendant, including the issuing of the prospectus, were for the purpose of selling stock.  The representations and tokens were public and general, and within the common-law definition of cheats and frauds, and therefore were continuing.  They were presented to Mrs. Smith in October, and when she accepted the stock she was acting exclusively upon them.  The negotiations were commenced three weeks prior to December 10th, and it was not error to admit evidence of the previous representations.  The admission in evidence of the statements made by defendant to Mrs. Smith after the signing of the deed was only in line with his former representations as cumulative evidence of his previous intent, and was not error.

The conclusion we have reached in regard to the admissibility of the prospectus and the sample of oil disposes of the other assignments of error.  Although the trial court did not admit them in evidence upon the ground upon which their admissibility is here determined, nevertheless they were properly admitted.  We find no error in the record.

The judgment of the lower court is affirmed.

AFFIRMED: REHEARING DENIED.