Argued December 17, affirmed December 31, 1914, rehearing denied January 26, 1915.

# STATE *v.* HAMMER.

(145 Pac. 35.)

**False Pretenses—Sufficiency of Evidence—Title to Land.**

1. In a prosecution for securing, by false pretenses, a signature to a deed, oral testimony by the prosecuting witness that she and the other signers of the deed owned the land, which was admitted without objection, was sufficient proof of the title.

[As to fraud in sale of real estate, see note in 2 Am. Dec. 77.]

**False Pretenses—Sufficiency of Evidence—Participation by Defendant.**

2. In the separate trial of one charged jointly with others with having obtained the execution of a deed by false pretenses, evidence *held* to show that the defendant participated with another in carrying out the fraudulent scheme.

[As to what is sufficient proof of fraud, see note in 65 Am. Dec. 157.]

From Multnomah: Robert G. Morrow, Judge.

Department 2.   Statement by Mr. Justice Bean.

On the 31st day of May, 1911, the defendant L. C. Hammer was jointly indicted with W. H. Whiteaker, C. F. A. Peck, H. G. Luker and J. C. Luker, by the grand jury of Multnomah County, and charged with the crime of having obtained the signature of Emma A. Smith to a deed by means of false pretenses.

The gist of the allegation of the indictment is that the defendants, conspiring together, made representations to Mrs. Smith that the Lake Oil, Gas & Pipe-Line Company, of which the defendants were officers and directors, was then the owner and had a legal title to a certain tract of 800 acres of land located in the State of California, upon which paraffin oil had theretofore been discovered in great quantities; that it was the most valuable oil land in California; that a certain bottle of oil then delivered to Emma A. Smith by the defendants was taken from holes dug at three feet in depth on the land; that a certain prospectus issued and published by the defendants and delivered to Emma A. Smith contained true statements, accounts and pictures representing the tract as being oil-bearing land; that it was of the value of $500,000; that the shares of stock issued by the corporation were of the value of $1 each; that the defendants, as directors and officers of the corporation, having for sale a large number of shares of its capital stock, made representations and pretenses to Emma A. Smith for the purpose of inducing her to purchase 7,950 shares of the corporation's capital stock, whereas, in truth, the corporation was not the owner, had no legal title to the tract of 800 acres, no paraffin oil or other oil had been discovered thereon, the tract was not the most valuable oil land in California, but was of no value; the bottle of oil so delivered was not taken from the land, and the prospectus or advertising pamphlet did not contain a true account and pictures representing said land, but contained false, fictitious and misleading statements. It is further shown that the defendants, with intent to injure and defraud, did fraudulently obtain the signature of Emma A. Smith to a certain warranty deed conveying to W. A. Whiteaker a piece

of land situated in Multnomah County, Oregon, containing 91.8 acres, of the value of $11,475, in exchange for 7,950 shares of the capital stock of the corporation; that Emma A. Smith, relying upon the false pretenses and representations and believing them to be true, was thereby induced to sign the deed.

The defendant Hammer demanded a separate trial. On the 23d day of June, 1913, his case was submitted to the jury, who returned a verdict of guilty as charged in the indictment. Judgment was rendered thereon sentencing the defendant to serve not less than one nor more than five years in the penitentiary. From this judgment the defendant Hammer has appealed. The defendant Whiteaker was found guilty as charged in the indictment. He appealed to this court, and the decision of the lower court was affirmed: *State* v. *Whiteaker,* 64 Or. 297 (129 Pac. 534).

AFFIRMED. REHEARING DENIED.

For appellant there was a brief and an oral argument by *Mr. Charles W. Corby.*

For the State there was a brief over the names of *Mr. Walter H. Evans,* District Attorney, and *Mr. John A. Collier,* Deputy District Attorney, with an oral argument by *Mr. Collier.*

MR. JUSTICE BEAN delivered the opinion of the court.

The assignments of error are all practically embodied in the assertion of the defendant that the court erred in not sustaining defendant's motion for a directed verdict of acquittal made at the close of the state's case. It is the main contention of the defendant that the oral testimony of Emma A. Smith that

she owned the real property described in the deed to which her signature was obtained was insufficient.

The evidence in the case tended to show that one Kelly discovered what was thought to be oil land in the Mona Lake Basin, California, and came to Portland to obtain assistance to develop the same; that Kelly, W. H. Whiteaker, and L. C. Hammer and others organized the Lake Oil, Gas & Pipe-Line Company, a corporation with a capital stock of $500,000, of which W. H. Whiteaker was president and L. C. Hammer secretary, for the ostensible purpose of developing a new oil field in Mona Lake Basin, California. Thereafter W. H. Whiteaker caused to be published a pamphlet containing photographs which pretended to represent scenes on lands owned by the company, one of which purported to show a party of people bailing oil out of an open hole in the company's lands. They falsely represented that the field was a proven one; that the company owned and had title to 800 acres of land in California upon which paraffin oil had been discovered; and that the land, by reason thereof, was worth $500,000. In September, 1910, defendant L. C. Hammer, together with Whiteaker, met Emma A. Smith, widow, nearly 65 years of age, and unaccustomed to business, to whom they recited the oil value of this land in Mona County, California, and exhibited pictures and samples of oil shales and fossils which they declared had been taken from the company's property. They further represented to her that the company had commenced to drill wells upon its lands, and that the pressure of gas was so strong that it blew the drill out, and the well had to be closed down until such time as heavier machinery could be obtained. The defendants further exhibited a sample

bottle of crude oil on which was a typewritten label as follows:

"Oil taken from holes dug at three feet in depth from our property in California."

In addition to the oral representations made by the defendants, an advertisement was prepared and printed by defendant and his co-conspirators and issued by the company. This was shown to Mrs. Smith and was introduced in evidence. It is headed in large capital letters:

THE WORLD'S GREATEST OIL FIELDS.
California's Billion-Dollar Industry.
[Here appears a photo.]
This Photo Taken on Our Property.
The Timber is Being Killed by Oil Coming to
the Surface.
Lake Oil Fields District Offers the Best Investment in Oil Properties in the Entire
State of California.
This Oil is of a Paraffin Base, with 52 Gravity.
Lake Oil, Gas and Pipe Line Company,
419 Railway Exchange Building,
Portland, Ore.

The evidence tends to show further that Emma A. Smith, relying upon these representations and believing them to be true, purchased 7,950 shares of the stock, paying for the same by giving Whiteaker for the benefit of the company, a warranty deed conveying to him 91.8 acres of land located on what is known as the Base Line Road, Multnomah County, Oregon; that Mrs. Smith was ignorant of the facts, and, believing and relying upon the representations so made, was thereby induced to sign said deed, and that all of such representations were false.

It is also contended upon the part of defendant that the testimony of Emma A. Smith shows that her signature was actually obtained by a person who was acting as an agent other than Hammer. It is clear, however, from the evidence that the agent was acting for the defendants, and that it was only a means which was employed by them to obtain the signature of Mrs. Smith.

Section 1964, L. O. L., provides:

"If any person shall, by any false pretenses, or by any privy, or false token, and with intent to defraud, * * obtain or attempt to obtain with the like intent the signature of any person to any writing the false making whereof would be punishable as forgery, such person, upon conviction thereof, shall be punished by imprisonment in the penitentiary not less than one nor more than five years."

The evidence requisite as proof of such a crime is prescribed by Section 1541, L. O.L., as follows:

"Upon a trial for having, by any false pretense, obtained the signature of any person to any written instrument, or obtained from any person any valuable thing, no evidence can be admitted of a false pretense expressed orally and unaccompanied by a false token or writing; but such pretense, or some note or memorandum thereof, must be in writing, and either subscribed by or in the handwriting of the defendant. * * "

1. As to the title which the evidence shows that Mrs. Smith had to the land embraced in the deed to which her signature was unlawfully obtained, there can be no question but that, if the defendant had forged the name of Emma A. Smith to the deed with a fraudulent intent, he would have been guilty of the crime of forgery, because the deed in question was in due form, signed and sealed by Mrs. Smith, attested by two wit-

nesses, and bears the certificate of a notary public to the effect that the same was properly acknowledged. Upon its face it was a complete and valid conveyance. Mrs. Smith, without objection on the part of defendant, testified that she, with others who also signed the deed, owned the farm described therein. This evidence was uncontradicted and is sufficient as to the title to lay a foundation for a violation of the statute. For a full discussion of what constitutes a violation of Section 1964, L. O. L., see the able opinions of Mr. Justice RAMSEY in *State* v. *Leonard,* 73 Or. 451 (144 Pac. 113), and on rehearing, rendered December 15, 1914. The facts in the case at bar are practically identical with those in the case against Whiteaker, Hammer's co-conspirator (*State* v. *Whiteaker,* 64 Or. 297 (129 Pac. 534), considered by this court in an opinion by Mr. Justice EAKIN. As to the law nothing further remains to be said in the case under consideration.

2. We have carefully examined the evidence, and it clearly appears that defendant Hammer was connected "hand and glove" with Whiteaker in a conspiracy for carrying out the fraudulent scheme which resulted in part in obtaining the signature of Emma A. Smith to the deed of a valuable farm. The evidence was ample to sustain the verdict. There was no error in denying the motion for a directed verdict of acquittal. We find no reversible error in the record. Nothing appears to indicate that the defendant did not have a fair and impartial trial.

The judgment of the lower court is therefore affirmed. AFFIRMED. REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE MCNARY concur.