[Crim. No. 10050.   Second Dist., Div. Three.   July 19, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. FRED RUIZ MONTOYA, Defendant and Appellant.

John P. Kightlinger, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Wiliam E. James, Assistant Attorney General, and David S. Sperber, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, J.—Defendant's conviction of violating Health and Safety Code, sections 11530 (possession of marijuana) and 11530.5 (possession of marijuana for sale) must be reversed for procedural error in the light of *People* v. *Krough,* 232 Cal.App.2d 150 [42 Cal.Rptr. 614]. That opinion was not published until after defendant's brief was filed in this court. The Attorney General, with his customary candor, does call our attention to the fact that the procedure condemned in *Krough* was followed but it is also argued, on behalf of respondent, that the error was not prejudicial "since at the trial additional evidence was introduced which incorporated the evidence shown at the preliminary hearing." With this we cannot agree.

We accept respondent's summary of the evidence produced at the preliminary hearing: "Harold F. Hostetler, a police officer for the City of Los Angeles, Harbor Division, was assigned to work plain clothes on October 11, 1963, in a plain police car, to work burglaries—there had been numerous burglaries in the daytime, in both garages and residences. He was parked with another officer, on the north side of 17th Street, approximately 75 feet from a garage when he observed a 1956 Oldsmobile pull into an alley at the rear of 1715 South Pacific. The officer saw a man whom he recognized as Jones get out of the left side of the vehicle, and he saw appellant, whom he had also seen before, get out of the right side. The men turned their heads south and north (Officer Hostetler saw appellant's full face) and walked over to the garage. It was closed; appellant opened it. . . .

"Appellant disappeared inside the garage while Jones stayed outside. Appellant was carrying a large brown sack when he emerged from the garage, and he placed it in the rear of the car on the driver's side; he walked around the car and got into the passenger's side. The vehicle then drove off down the alley, and the officers followed. . . .

"Officer Hostetler pulled up on the left side of the car when it stopped for a traffic sign. His partner displayed his badge by holding it out of the window and stated, 'Police

officers. Pull over to the curb.' The driver of appellant's car looked in the officers' direction and accelerated. . . .

"The car stopped, after some turns, in an alley; the police car stopped behind it. Officer Hostetler's partner got out and Jones got out and started toward the police vehicle. Jones then turned around and got back into his car. Officer Hostetler's partner stated, 'Police officers. Stop or I'll shoot.' The car started to move east. . . .

"The officers pursued the car; around 4:25 p.m. Officer Hostetler observed a large brown bag come from the driver's side of the vehicle and strike the pavement. Numerous objects came out of the bag and they came to rest around and underneath a white truck parked at the curb. . . . The officers continued their pursuit until the car pulled to the curb and stopped. The officers got out of their car and arrested Jones, who was the only person in the car at that time. . . .

"Albert E. Breeden, a police officer for the City of Los Angeles, assigned to Harbor Division, went to 20th Street and Pacific Avenue on October 11, 1963, at approximately 5:00 o'clock in the afternoon. As he approached the area, he saw a large brown bag sitting at the curb behind a white truck. He picked up the bag and put it in the police car and thereafter took it to the station and booked it in the evidence locker. . . .

"The bag contained 67 small wax bags of marijuana. The officer also found three small packages of compressed marijuana. . . .

"On October 11, 1963, Alex Ramos saw a number of wax or cellophane bags in the street within an area approximately 3 x 4 feet. They were close to a truck. There was nothing else in the area except some material which looked like seeds that had come from one of the bags. Mr. Ramos could see a green material, like alfalfa, inside the bundles; he collected the packages and put them in one bag. . . .

"After putting the items into a bag, Mr. Ramos laid it close to the curb and went into his house. Later he saw a policeman pick the bag up from the spot where he had left it on the street. Between the time he first saw the items in the street and the time he saw the officer take the bag away, he did not see anyone touch, move or add anything to those items. But there were about 12 or 15 people when Mr. Ramos first arrived on the scene.

"It was stipulated that Mr. Penprase, an expert forensic chemist, was called to testify that the 67 wax bags referred to

by the police officer were subjected to a chemical and physical analysis from which he formed the opinion they contained marijuana. . . .

"Edgar P. Brown, a police officer for the City of Los Angeles, assigned to the Narcotics Division, has received training in the manner marijuana is sold on the illicit market. He examined the wax bags and was of the opinion the marijuana in the bags was wrapped for the purpose of sale to the small dealer. . . .

"The total weight of the 67 bags was 1,579 grams. The compressed material which was involved is referred to as a brick or a pound. There were 3 bricks. Their total weight was 1300 grams. The marijuana was manicured. It was a street marijuana. . . .

"Officer Hostetler indicated in his report that Jones and an unknown suspect got out of the car. He mentioned that he knew who the unknown suspect was, but couldn't think of his name, in another report three days later. . . .

"Edgar P. Brown was called as a witness on behalf of the defendant. Officer Brown testified that in the course of the investigation the Jones automobile was not printed. No identifiable fingerprints were lifted off of the 67 bags of marijuana; there were no fingerprints to identify anybody in connection with the marijuana. . . ."

The information against Jones had been filed after another preliminary hearing. Both cases came on for trial in the superior court on the same day and were called together though they had not been consolidated at that time. Montoya then waived his right to a jury trial, as did Jones. The court then made the following announcement: "It normally saves a great deal of time if the Court may read the transcript with the right reserved to both counsel to further cross-examine any witness that was called by the People, and to put on such additional evidence as either side may wish. It normally saves a lot of time. The Court can normally read a transcript much faster than hear the witnesses testify."

After some discussion a stipulation was arrived at which was stated by the deputy district attorney as follows: "The People offer to stipulate at this time with the defendants, with Mr. Montoya and Mr. Jones, that the Court may read and consider the transcript of the preliminary hearing had in this case with respect to Fred Ruiz Montoya, that is, Case No. 280799, with the same force and effect as if the witnesses there and then called were deemed here so called, sworn and

testified as they did at the preliminary hearing, and any exhibits offered at that time are deemed offered at this time, and any stipulations entered into at that time are deemed entered into at this time, with the same force and effect, subject to any legal objections which the Court may rule on at this time, and subject to the right of both parties to offer additional evidence at this time. That is with respect to Montoya and the transcript in Case No. 280799.''

A substantially identical stipulation was made with regard to Jones.

The transcripts were received in evidence and the court then made the following announcement: ''Now the Court would like to see counsel in chambers. The Court is assuming now that these cases will not be consolidated, because they are submitted on separate transcripts and consequently are not consolidated.''

After a conference in chambers the court stated: ''Will it be stipulated, gentlemen, that counsel in chambers have informed the Court fully as to the contents of the reporter's transcript of the preliminary examination in both cases and that the Court may rely upon what counsel have informed the Court is contained in those transcripts, and the Court may act upon that information and may not actually need to read the transcript?'' Both parties stipulated as requested by the court. Additional evidence was then produced consisting of further examination of Officer Hostetler, largely dealing with his identification of Montoya and the pursuit of the car driven by Jones.

Officer Brown was again examined, but the questioning was confined to a conversation which he had with Jones after that defendant's arrest, which was received only against Jones.

Officer Breeden substantially repeated his testimony, as did Officer Gleason. The latter elaborated somewhat on his reasons for being staked out in the area where Montoya went into a garage and for suspecting that a burglary had been committed on that occasion. At the end of the People's case the defense objected to the admission of the package collected by Officer Breeden and the court reserved its ruling.

Jones then testified, denying that Montoya was in the car with him and putting all blame on a mythical ''Louie.'' His testimony was received not only on the merits but also as going to the justification of the attempted stopping of his car by Officers Hostetler and Gleason.

Montoya and his sister then attempted to establish an alibi by testimony which was not believed by the court.

At the conclusion of the evidence exhibit 1, the brown bag and its contents, was admitted after extended argument.

Here, as in *People* v. *Krough, supra,* there is no indication in the record that Montoya was present at the conference in chambers when counsel ''informed the Court fully as to the contents of the reporter's transcript of the preliminary examination . . .''

The Attorney General suggests that if at the trial in the superior court sufficient evidence is produced apart from the unread transcript, no prejudicial error results. We need not decide that point because, as we will show, this was not the case here. Suffice it to say that even in such a case the mere fact that a prima facie case is proved at the trial does not necessarily dispose of the inherent vice of a procedure where the court relies, in part at least, on oral, unreported, narrative summaries of testimony given at the preliminary hearing, which are disclosed in chambers in the absence of the defendant. Difficult questions concerning the defendant's right to a public trial and his right to be present at the trial would still remain. (Cal. Const., art I, § 13; Pen. Code, § 1043.) In any event, the problem is academic in the case at bench.

It is evident from the recital of the evidence adduced at the preliminary hearing and in the superior court respectively, that in several vital aspects the evidence before the magistrate was not repeated at the trial:

1. At the preliminary hearing it was stipulated that a Mr. Penprase would testify that he was an expert forensic chemist and that the material found in People's exhibit 1—that is to say the brown bag handed to Officer Breeden by Mr. Ramos—was marijuana. This stipulation was expressly limited ''for the purpose of the preliminary hearing only.'' While the stipulation entered into at the trial which we have previously set forth incorporated the stipulation entered into at the time of the preliminary hearing, we still cannot tell what counsel told the judge at the unreported conference in chambers concerning stipulations entered into at that time.

2. As noted, Montoya was convicted not only of possessing marijuana, but also of possessing marijuana for sale. At the preliminary hearing counsel for Montoya expressly refused to stipulate that Officer Brown could be deemed to have testified that the marijuana in question was packaged for sale.

The People then proceeded to qualify him as an expert and he did testify that in his opinion "the marijuana in the present form was that way for the purpose of sale to the small dealer." There is nothing in the trial record, apart from the stipulation that counsel, in chambers, fully informed the court concerning the contents of the transcript of the preliminary hearing, which comes even close to repeating this testimony.

3. As far as the record at the trial is concerned, we lose sight of what may have been the contraband (exhibit 1) with Officer Gleason's testimony that after Jones made a right turn from Pacific Avenue onto 20th Street, the witness saw a sack fly out of the left window of defendant's vehicle. In Officer Hostetler's testimony it was simply assumed that the bag had been thrown out of the car and the matter was covered only indirectly. The next time we meet exhibit 1 at the trial is through Officer Breeden who testified simply that at 5 p.m. he picked it up at 534 20th Street in San Pedro. According to the testimony at the preliminary hearing this seems to have been about 40 to 45 minutes after the time when something was thrown out of Jones' car. Ramos, the connecting link between the testimony of Officer Hostetler and Officer Gleason and Officer Breeden, did not, as we have seen, testify at the trial. It is interesting to note that after Officer Breeden testified at the trial, counsel for Montoya found it advisable to explain to the court why Breeden received the items making up exhibit 1 in a brown bag when the testimony at the preliminary hearing was to the effect that they were scattered over the street when last seen by Officer Hostetler.

It is thus apparent: 1. On the vital question of whether or not the marijuana was possessed "for sale" there was no independent evidence whatever produced at the trial; 2. the identity of the material as marijuana was covered by stipulation at the preliminary examination and we do not know whether or not the court was advised of the stipulation; and 3. without deciding that the evidence produced at the trial linking exhibit 1 to the bag which left Jones' car during the chase is insufficient as a matter of law, it is obvious that it is much weaker. All that it really amounts to is that on the same street where Officer Gleason saw a sack fly out of Jones' car, Officer Breeden, more than 30 minutes later found the exhibit.

· These gaps in the prosecution's case were supposedly filled during the unreported discussion in chambers, at which defendant was not present. In *People* v. *Krough, supra,* the conviction was reversed because the court could only speculate as to what evidence the trial court considered in finding the defendant guilty. The same is true here.

It is also worth noting that the procedure employed by the trial court here was not one suggested by defendant or his counsel as a matter of trial tactics, attempting perhaps to curry favor with the court by lessening its burdens. As our recital of the facts shows, the invitation to counsel to attend a session in chambers came from the court, as did the suggestion, after the session, that counsel stipulate to the correctness of the information imparted by them to the court. Of course, if we had to guess, we would probably conclude that the matters not covered at the trial were correctly related during the conference in chambers. Certainly Montoya has not shown that they were not and we can hardly assume that an experienced judge would find him guilty of possessing marijuana for sale without information from some source that he had violated the statute. Yet it appears to us that a procedure whereby a vital element of guilt is presented to the trier of facts in the absence of the defendant is so violative of our concepts of a fair trial, that we are faced with one of those situations where we should not inquire into the question of actual prejudice.

Our Supreme Court recently said in *People* v. *Bostick,* 62 Cal.2d 820, 824 [44 Cal.Rptr. 649, 402 P.2d 529], that reversal per se is required in cases in which the trial was "fundamentally unfair." Assuredly it is easier to announce than to apply such a principle. Some situations—the list does not purport to be exhaustive—where our courts have held article VI, section 4½ of the Constitution to be inapplicable are noted in the footnote.[1] Some leading decisions which affirm

---

[1]Stipulation by counsel amounting to a plea of guilty (*People* v. *Rogers,* 56 Cal.2d 301, 307 [14 Cal.Rptr. 660, 363 P.2d 892]); denial of request to clear the courtroom at the preliminary hearing under Penal Code, section 868 (*People* v. *Elliot,* 54 Cal.2d 498, 504 [6 Cal.Rptr. 753, 354 P.2d 225]); failure to waive jury trial by defendant personally (*People* v. *Holmes,* 54 Cal.2d 442 [5 Cal.Rptr. 871, 353 P.2d 583]); changing the date for argument on a motion for new trial to a day on which counsel for defendant was not prepared to argue (*People* v. *Sarazzawski,* 27 Cal.2d 7, 19 [161 P.2d 934]); unauthorized presence of alternate juror during jury's deliberations (*People* v. *Britton,* 4 Cal.2d 622 [52 P.2d 217, 102 A.L.R. 1065]); undue limitation of *voir dire* examination of jury (*People* v. *Carmichael,* 198 Cal. 534, 547 [246 P. 62]); unlawful

convictions in spite of error of constitutional dimension are noted in *Bostick*. In our opinion the procedure employed here is so foreign to the Anglo-American concept of a fair trial that, to quote the words of Justice Vallée in *People* v. *Diaz,* 105 Cal.App.2d 690, 700 [234 P.2d 300], it is "in itself, a miscarriage of justice."

█ The only other question presented by this appeal, which is likely to arise at a retrial, is the alleged illegal attempt by the officers to stop the car driven by Jones, which attempt eventually resulted in the seizure of the contraband when Jones attempted to dispose of it. (*Badillo* v. *Superior Court,* 46 Cal.2d 269, 273 [294 P.2d 23].) It appears to us that the facts presented by respondent, if believed, justified the officers in attempting to stop Jones and his companion for questioning under the rule of *People* v. *Mickelson,* 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658]. The testimony of Jones merely raised a question of fact which will have to be resolved by the trial court (*People* v. *Gorg,* 45 Cal.2d 776, 780-781 [291 P.2d 469].) It is noted however that even Jones admitted that "Louie" went into the garage in question from the alley and brought out a bag.

The judgment is reversed.

Shinn, P. J., and Ford, J., concurred.

---

separation of jury (*People* v. *Werwee,* 112 Cal.App.2d 494, 502 [246 P.2d 704]); unlawful denial of peremptory challenge (*People* v. *Diaz,* 105 Cal.App.2d 690, 700 [234 P.2d 300]); reliance by prosecution on testimony of a witness who was promised immunity in the event defendant should be bound over for trial (*People* v. *Green,* 102 Cal.App.2d 831 [228 P.2d 867]); denial of the right to a public trial (*People* v. *Byrnes,* 84 Cal.App.2d 72 [190 P.2d 290].)