Phillip Ray **LANIER**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. 932.

Supreme Court of Alaska.

Dec. 16, 1968.

Joe P. Josephson, of Pollock, Josephson & McNealy, Anchorage, for appellant.

Harold W. Tobey, Asst. Dist. Atty., and Douglas B. Baily, Dist. Atty., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

## OPINION

RABINOWITZ, Justice.

A superior court jury found appellant guilty on 60 separate counts of false pretenses on soliciting for organizations.[1]

A brief résumé of the relevant factual background discloses the following: In 1956 or 1957, the Spenard Boy's Club of Anchorage, Alaska, was organized for the purpose of conducting athletic activities for boys. Appellant, Phillip Ray Lanier, was a member of the American Legion Post 28, Anchorage, which organization sponsored the Spenard Boy's Club. William Davenport, manager of the Spenard Boy's Club, sought to raise the sum of $500 to construct a hockey rink for the Boy's Club. Davenport was introduced to appellant by David Grove, the Commander of American Legion Post 28. This meeting was arranged in light of appellant's previous experience as a professional fund raiser.

1. AS 11.20.450 makes this crime a misdemeanor punishable by fine of not more than $100, or by imprisonment in jail for not more than three months, or by both.

As a result of this meeting, appellant, under the name of Talent Attractions, and Davenport, on behalf of the Boy's Club, entered into a "Performance Agreement." As part of this August 9, 1963, agreement, appellant agreed "to produce a fund raising drive in Anchorage, Alaska during the months of ——— to be mutually agreed upon" in order to assist the Spenard Boy's Club in its "drive for the purpose of earning money with which to carry on certain benevolent assistance * * *." Under the terms of this agreement, appellant guaranteed

> to earn the sum of $600.00 * * * as a result of this enterprise. Party of the second part [appellant] shall receive the balance of the gross receipts remaining after all bills have been paid.

The Spenard Boy's Club, on its part, covenanted to

> permit the use of its name in order to stimulate the solication of funds, thereby insuring the financial success of said drive.

In conjunction with the execution of this document, Davenport opened a checking account at the First National Bank of Anchorage for the Spenard Boy's Club, and appellant was given the authority to write checks on the account. Appellant then proceeded to solicit funds and some four months later, in December 1963 or January 1964, appellant informed Davenport that money was available. At this time Davenport told appellant the club did not need the money due to the fact of an early freeze which prevented grading of the hockey rink site. Approximately one year later, in January of 1965, appellant left a $500 check for Davenport with an employee at the Anchorage International Airport Maintenance Shop where Davenport was then employed. In October of 1965, Davenport learned that funds were still being solicited for the Spenard Boy's Club of Anchorage.

The 60 counts of false pretenses on soliciting for organizations followed this revelation.

At trial, evidence was presented concerning the manner in which funds were raised. Joseph Testa testified that he was employed by appellant in September or October of 1965 for two weeks to contact, by telephone, prospective donors to the Spenard Boy's Club. Appellant furnished Testa with cards and directed him to call the people indicated on the cards and solicit contributions for the Boy's Club. During the course of his 2 weeks' employment, Testa observed appellant typing envelopes and receipts. Dolores Holtan testified she was employed by appellant to collect funds for the Spenard Boy's Club in September or October of 1965. As part of her employment routine, appellant would furnish her with envelopes containing completed receipts which she would then deliver to donors upon obtaining contributions. At trial the state's attorney and appellant's counsel entered into a stipulation which applied to 52 of the 60 separate counts. This stipulation established that solicitations were made, cash or checks were then picked up, and a receipt left with the person or business making the donation. The receipts were typed on a typewriter owned and possessed by appellant.[2]

The jury, in answer to a special interrogatory, found the Performance Agreement, which was entered into on August 9, 1963, between appellant and Davenport on behalf on the Spenard Boy's Club, had terminated on the 31st day of January 1964, and by their verdict found appellant guilty of all 60 counts.

At the threshold, we must answer several questions concerning the meaning of Alaska's law which makes it a misdemeanor to employ false pretenses in soliciting for a beneficial or charitable organization. The

2. The stipulation reads in part:
    It is further stipulated that the invoices or receipts made out to the various businesses and delivered to the various businesses indicating that a donation had been made to the Spenard Boy's Club were typed on a typewriter owned and possessed by Phillip Ray Lanier.

statute we are primarily concerned with is AS 11.20.450 which reads in part:

> A person who, by oral or written words, or by acts or conduct, falsely represents or pretends to be a member ·or authorized agent or representative of a * * * beneficial, or charitable society, or association, or other organization of any kind, and, while engaged in making a false representation or pretense, or by means of a false representation or pretense, obtains from a person, money or written promise to pay money or other property is guilty of a misdemeanor * * *.

Relevant to appellant's initial argument concerning the proper interpretation of AS 11.20.450 are the provisions of AS 11.20.460 which provide that:

> It is a false representation, or pretense, within the meaning of * * * [AS 11.20.450] of this chapter, for a person to represent falsely or pretend to be a member, agent, or representative of a * * * beneficial or charitable society, or association, or organization which has no bona fide existence. Wearing the distinctive garb or emblem of a * * * beneficial, or charitable society, or association, or organization is a representation or prétense, by the person wearing it that he is a representative of the * * * beneficial, or charitable society, or association, or organization.

Appellant contends that AS 11.20.460 furnishes the exclusive catalog as to those acts which are encompassed within the ambit of AS 11.20.450. More particularly, appellant argues that AS 11.20.450 can be violated in only two ways. The first type of activity which is proscribed is falsely representing or pretending to be a member of a charitable or beneficial organization that has no bona fide existence. Since the evidence adduced at trial disclosed the Spenard Boy's Club did have a bona fide existence at the time in question, appellant

argues that the government's proof failed to show any violation of AS 11.20.450.

Secondly, appellant takes the position that AS 11.20.450 can be violated by the wearing of a distinctive garb or emblem of a beneficial, or charitable society and while so garbed, obtaining money or a written promise to pay money. Consistent with this argument, appellant further posits that since the record is bare of any evidence tending to show that appellant was attired in any such distinctive garb, no violation of AS 11.20.450 occurred.

■ We cannot agree with appellant's analysis of the effect of AS 11.20.460 upon AS 11.20.450. In our view, adoption of appellant's position would lead to an unintended and unreasonably narrow construction of AS 11.20.450. Historically, AS 11.20.450 and AS 11.20.460 were originally enacted as one statute.[3] We think it clear that in enacting AS 11.20.460 the legislature intended to identify and prohibit two activities which otherwise might not have been construed to come within the proscription of AS 11.20.450. We therefore hold that the fact the Spenard Boy's Club was an existing charitable organization, and at the time the false pretenses were purportedly made by appellant for solicitations in behalf of this organization appellant did not wear any distinctive garb or emblem of the club, did not remove appellant's conduct beyond the reach of AS 11.20.450.

We must decide whether AS 12.45.030 applies to prosecutions based upon asserted violations of AS 11.20.450. AS 12.45.030 treats the subject of evidence necessary in false pretense prosecutions and provides as follows:

> Upon a trial for having by a false pretense obtained the signature of a person to a written instrument, or obtained from any person any valuable thing, no evidence can be admitted of a false pretense expressed orally and unaccompanied by a false token or writing. The pretense or some note or memorandum of it

3. SLA 1923, ch. 24.

shall be in writing and either subscribed by or in the handwriting of the defendant. This section does not apply to an action for falsely representing or personating another, and in that assumed character receiving any valuable thing.

■■■ Grounding its position on the language contained in the last sentence of this statute, the state contends that non-humans (i. e., corporate entities) are encompassed within the scope of "another" as used in AS 12.45.030. We reject the state's contention here because not to do so would lead to the total emasculation of the protection intended by this statute. We hold that "another," as used in the last sentence of AS 12.45.030, is limited to human beings and, therefore, the statute's evidentiary requirements are applicable to the case at bar. We must, therefore, next determine whether the government's proof satisfied AS 12.45.030's evidentiary criteria.

In State v. Germain,[4] the Supreme Court of Oregon, in referring to the statute from which Alaska's AS 12.45.030 was adopted, said in part:

In England, and in many of the states, neither the false pretense nor the evidence of it is required to be in writing; in fact, statutes requiring either of these requisites are the exception, rather than the rule. However, in this state, as a precaution against perjury, the Legislature has required the evidence of such false pretense to be accompanied by a writing or some false token. * * *

We think that the law excluding oral evidence of a false pretense, unless accompanied by some note or memorandum thereof in writing, was passed out of abundant caution to preserve the liberty of the citizen, and to require corroboration of oral testimony by some memorandum in the handwriting of the person accused.

Of additional pertinence is the Supreme Court of Oregon's opinion in State v.

Leonard[5] where in construing AS 12.45.030's counterpart, the court pointed out a distinction which we believe to be controlling here. There the court said:

Where the false pretense is expressed orally and is accompanied by a false token or writing, it is not necessary that there be any note or memorandum thereof in writing, either subscribed by the defendant or in his handwriting.

Where, however, the false pretense is expressed orally and is not accompanied by a false token or writing, there must be some note or memorandum thereof in writing either subscribed by or in the handwriting of the defendant.

In drawing this distinction, the Oregon court relied in part upon its prior decision in State v. Whiteaker[6] where it was stated:

If the false pretenses are expressed orally, they must be accompanied by a false token or writing; if not accompanied by a false token or writing, then the false pretense, or some note or memorandum thereof, must be in writing signed by or in the handwriting of defendant. The meaning of section 1541 * * * is not rendered obscure or doubtful by the latter clause. *That clause cannot be held to refer to a false pretense expressed orally and accompanied by a false token or writing.* (emphasis added)

■■■ This analysis made by the Supreme Court of Oregon has been ignored by the parties to this appeal. Nonetheless, we are of the view that the distinction drawn in the *Leonard* and *Whiteaker* cases is controlling here. For we are of the opinion, and so hold, that in the instant appeal the government's proof showed that the oral false pretenses in question, namely the telephone solicitations were accompanied by the printed and typed receipts which were false and, therefore, it was not necessary that appellant's false pretenses be evidenced by some note or mem-

4. 54 Or. 395, 103 P. 521, 523–524 (1909).

5. 73 Or. 451, 144 P. 113, 118 (1914).

6. 64 Or. 297, 129 P. 534, 536 (1913).

orandum signed by or in the handwriting of appellant.

Review of the evidence discloses the state proved that:

[S]omeone from the business alleged in the Count of the Information received a telephone call from a person representing himself or herself to be a representative of the Spenard Boy's Club requesting that a donation be made to the Spenard Boy's Club. In many instances the person making the telephone call would have explained that the donation was for the purpose of sponsoring a boy in an athletic program and the business would have its name placed on the boy's uniform for advertisement purposes. It would have been the further testimony that shortly after the telephone call a person would have gone to the businesses previously contacted by telephone and picked up either cash or a check in the amount alleged in the specific count and have left a receipt, many of which are in evidence, stating that a donation had been made to the Spenard Boy's Club. Further the testimony would have been that the cash collected has never been returned to the business it was collected from and the checks were charged to the respective accounts.[7]

In addition to this stipulation, the jury heard the testimony of Testa and Holtan which detailed appellant's operating methods, including the use of Spenard Boy's Club receipts which were typed by appellant.[8] The receipts which were given to every donor were on the letterhead of the Spenard Boy's Club and indicated that the particular donation was being made to the club's athletic equipment drive. The printed receipt forms had the date, name and address of donor, and the amount of the contribution typed in before delivery of the receipt was made to the donor. Finally, the government's evidence proved that at the times the receipts were given, appellant did not have the authority to solicit funds on behalf of the Spenard Boy's Club, and in fact, no fund raising campaigns were ever conducted by the club during the periods covered by the receipts in question.

Under these circumstances we hold that the state's proof met AS 12.45.030's evidentiary criteria of a false writing which accompanied an oral false pretense.

In State v. Leonard,[9] the Supreme Court of Oregon said:

Under section 1541 * * * where the false pretense is expressed orally, and no note or memorandum thereof is in writing subscribed by the defendant or in his handwriting, it must be accompanied by 'a false token or writing.' As is stated in the authorities, a false writing may be a false token.

The Supreme Court of Oregon then went on and adopted Black's definition of "false." This definition is, in part, as follows:

In law, this word means something more than untrue; it means something designedly untrue and deceitful, and implies an intention to perpetrate some treachery or fraud.[10]

---

7. This is part of a stipulation counsel entered into at trial and was introduced into evidence.

8. These Spenard Boy's Club receipts were partially printed and partially typed. The typewritten portions indicated the date of the receipt, the name and address of the donor, and the amount contributed. Edwin Meier testified that Service Printing Company had printed the receipts in question after appellant had placed orders for them. Meier further testified that the last order for these receipts was made on October 5, 1965.

9. 73 Or. 451, 144 P. 113, 118 (1914).

10. In the earlier case of State v. Whittaker, 64 Or. 297, 129 P. 534, 536 (1913), the Supreme Court of Oregon defined false token or writing as referring

to something real, visible, and substantial, or some writing purporting to be the act of some person, and so framed as to have more weight and influence in effecting the fraud than the mere assertion of the party defrauding. The latter need not be subscribed by or in the handwriting of the defendant.

On the basis of the foregoing, we hold that the state produced sufficient evidence under AS 12.45.030 of false writings which accompanied the oral false pretenses in question.

■ Appellant next argues that the trial court committed prejudicial error in allowing testimony which violated the parol evidence rule. In short, appellant contends that the August 9, 1963, Performance Agreement, which was entered into between appellant and William Davenport on behalf of the Spenard Boy's Club, was a fully integrated and unambiguous document.[11] Since the matter has not been argued in this appeal, we defer, until a more appropriate occasion, decision upon the question of whether or not the parol evidence rule is even applicable in criminal prosecutions.[12] Assuming the applicability of the parol evidence rule to this case, we hold that the trial court did not err in its ruling involving such rule. In our view, the August 9, 1963, Performance Agreement was incomplete and ambiguous in two aspects. First, the agreement did not specify how long a period of time appellant was given authority to solicit funds on behalf of the Spenard Boy's Club. Secondly, the agreement is ambiguous as to the amount of compensation appellant was to receive for his fund raising efforts. We, therefore, conclude that the trial court properly admitted testimony which was relevant to these ambiguous facets of the Performance Agreement. Essentially, this parol evidence disclosed that in the fall of 1963 the Spenard Boy's Club undertook a fund raising campaign to solicit $500 for the purpose of constructing a hockey rink; that Davenport, on behalf of the club, conversed with appellant as to the possibility of raising this amount for construction of the hockey rink; that in December 1963, or January 1964, appellant informed Davenport he had the money; that after January 1964, appellant met several times with Davenport and told him he had the initial contract fulfilled and when asked if he needed more money, Davenport replied in the negative. Davenport also testified he did not authorize appellant to solicit funds on behalf of the club in 1964 or 1965 and that during this period the Spenard Boy's Club did not conduct any fund raising campaigns. Since the August 9, 1963, Performance Agreement was both incomplete and ambiguous regarding how long appellant was authorized to solicit funds, we hold that the trial court properly admitted the questioned parol evidence on this crucial issue.

■ In conjunction with his parol evidence rule contentions, appellant further argues that the trial court committed prejudicial error in the giving of instruction number 11–b which read in part: "You are instructed that from all the evidence and circumstances surrounding this agreement you must determine the intention of the parties as to that agreement." Appellant's position is that this language is too broad and in essence gave the jury free rein to rewrite the terms of the Performance Agreement. We disagree. Appellant's argument here overlooks the context in which this single sentence in instruction 11–b appears. When instruction 11–b is read as a whole, it is clear

---

11. In *Port Valdez Co. v. City of Valdez*, 437 P.2d 768, 772 (Alaska 1968) (footnote omitted), we said in part: "Absent any element of ambiguity in paragraph 9 of the January 30, 1965, agreement, the prerequisite for admissibility of parol evidence is lacking."

12. See IX J. Wigmore, Evidence § 2446, at 149–50 (3d ed. 1940); State v. Davison, 74 N.H., 10, 64 A. 761 (1906), where the court said:

The objection taken * * * that Fellows' testimony was incompetent because the evidence of the contract was all in writing, which could not be affected or changed by parol, is not applicable. * * * In this controversy between the state and one of the parties to the contract, where the criminal intent of the defendants was in issue, any facts bearing upon the belief under which the defendants acted were competent.

that the jury was asked to determine the intention of the parties to the Performance Agreement as to the term or duration of the agreement. Thus, the jury was asked to determine if the agreement was intended to be of indefinite duration, whether or not a specific time was contemplated, or whether or not the agreement was intended to be terminated upon the accomplishment of a specific purpose. Still assuming that the parol evidence rule was applicable in this criminal prosecution, we hold that the giving of instruction 11–b was not error.

■ Appellant's final point is that the trial court erred in failing to grant his motion for judgment of acquittal. In Gargan v. State,[13] this court said:

> When presented with a specification of error of this nature, this court will consider 'only those facts in the record most favorable to the state and such reasonable inferences as the jury may have drawn from them * * *.' The record is reviewed in this light in order to ascertain whether 'fair minded men in the exercise of reasonable judgment could have differed on the question of whether [appellant's intent to steal] had been established beyond a reasonable doubt.'[14]

■ When viewed against the foregoing criteria, we conclude that the trial court properly denied appellant's motion for judgment of acquittal. Our study of the record has convinced us that there was ample evidence to support the jury's special finding that the Performance Agreement was terminated in January of 1964; that the respective donors relied on the false pretense that the solicitation was being made by authorized agents on behalf of the Spenard Boy's Club for a current fund raising project; and that there was sufficient evidence of appellant's fraudulent intent to sustain the jury's verdict. In this latter regard, the jury had evidence that Davenport had informed appellant that no more money was needed; that appellant knew the purpose of. the fund raising drive was to raise only $500 for the construction of a hockey rink; that for well over a year and one-half after appellant told Davenport the money was available, appellant continued to solicit and collect large sums of money purportedly on behalf of the Spenard Boy's Club.[15] The jury also had before it Davenport's testimony concerning appellant's admission of wrongdoing after Davenport's October 1965 discovery that funds were still being solicited by appellant.

The judgment and commitment entered below is affirmed.

13. 436 P.2d 968, 969 (Alaska 1968) (footnotes omitted).

14. In support of the text, we cited our decision in Maze v. State, 425 P.2d 235, 239 (Alaska 1967); Battese v. State, 425 P.2d 606, 610 (Alaska 1967), and Bush v. State, 397 P.2d 616, 618 (Alaska 1964).

15. It was estimated that over $8,000 was obtained by appellant from donors to the Spenard Boy's Club.