**Phillip Ray LANIER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 1219.**

Supreme Court of Alaska.

June 29, 1971.

Victor D. Carlson, Public Defender, Michael L. Rubinstein, Asst. Public Defender, Anchorage, R. Collin Middleton, Asst. Public Defender, Ketchikan, for appellant.

G. Kent Edwards, Atty. Gen., Juneau, Harold W. Tobey, Dist. Atty., Robert L. Eastaugh and Keith E. Brown, Asst. Dist. Attys., Anchorage, for appellee.

Before BONEY, C. J., and DIMOND, RABINOWITZ, CONNOR and ERWIN, JJ.

## OPINION

DIMOND, Justice.

This is an appeal from the summary denial of appellant's motion for post-conviction relief.[1]

Appellant was convicted by a jury on 60 separate counts of false pretenses in soliciting for organizations.[2] He was sentenced to the maximum punishment on 60 counts, with the terms of imprisonment on the first 20 counts to run consecutively and those on the remaining two groups of 20 to run concurrently with the first group of 20. The overall punishment imposed amounted to five years in jail and a $6,000 fine. The judgment of conviction was affirmed on appeal to this court.[3]

Appellant next sought post-conviction relief in the superior court. The request for relief was predicated on three grounds: (1) that the sentence constituted cruel and unusual punishment; (2) that appellant was not advised of his right to a severance of the 60 counts; and (3) that the appellant was denied his right of confrontation. Finding that the petitioner had raised no genuine issue of material fact, and that the arguments asserted were without merit, the superior court summarily denied the petition.[4]

Appellant now appeals this denial.[5] Since the second ground urged before the superior court has not been briefed on appeal, it is deemed waived.[6] Because of the relative importance we attach to appellant's two remaining arguments, we consider them here in reverse order.

*Right to Confrontation*

At the trial, appellant's counsel waived cross-examination of the state's witnesses on 52 of the 60 counts charged. A stipulation as to what these witnesses would have testified was made, and the jury was instructed to consider the stipulation as evidence.

Appellant alleges that his trial counsel did not consult him regarding this action. In an affidavit filed in the superior court, trial counsel controverted appellant's assertion. He claimed that he did discuss the matter with appellant and that the latter had agreed to the action taken.

The discrepancy between the conflicting assertions was not resolved by the superior court, and we make no attempt to resolve it here. We shall assume, however, for the purposes of this opinion, that appellant was not consulted and did not consent to counsel's action in waiving cross-examination of a number of the state's witnesses, in order that we might pass upon the important question raised by appellant—i.e., whether and to what extent trial counsel

---

1. Crim.R. 35.

2. See Lanier v. State, 448 P.2d 587 (Alaska 1968), for a description of the facts of this case and the proceedings at trial. The crime, proscribed by AS 11.20.450, is punishable by a fine of not more than $100, or by imprisonment in jail for not more than three months, or by both.

3. 448 P.2d 587 (Alaska 1968).

4. Crim.R. 35(g) (3).

5. Crim.R. 35(j).

6. Sup.Ct.R. 11(a); Lewis v. State, 469 P. 2d 689 (Alaska 1970).

may waive a basic right of his client at the trial.

Appellant argues that what counsel did was to waive appellant's constitutional right to confront, through cross-examination, the witnesses against him.[7] Since appellant claims he neither knew of nor consented to this waiver, he claims there was no intentional relinquishment by him of a known right or privilege[8] as to being confronted with the witnesses against him, and therefore counsel's action in waiving cross-examination was ineffective.

■ The issue presented concerns serious questions regarding the effectiveness of a purported waiver of constitutional rights. We treat the issue of waiver of such rights as governed by federal constitutional law. Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837, 869 (1963). A finding of waiver by this court would not bar "independent determination of the question by the federal courts on habeas, for waiver affecting federal rights is a federal question." Id.

The United States Supreme Court has been chary in finding waivers of fundamental constitutional rights. Glasser v. United States, 315 U.S. 60, 70–71, 62 S.Ct. 457, 86 L.Ed.2d 680, 699 (1942) [right to counsel]. In Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393, 57 S.Ct. 809, 812, 81 L. Ed. 1177, 1180 (1937) [right to jury trial], it was noted that "courts indulge every reasonable presumption against waiver" of such rights. In Ohio Bell Tel. Co. v. Pub. Util. Comm'n, 301 U.S. 292, 307, 57 S.Ct. 724, 81 L.Ed.2d 1093, 1103 (1937), Justice Cardozo, in rejecting the arguments that one of the parties had waived his right to object to a certain means of collecting evidence, said "[w]e do not presume acquiescence in the loss of fundamental rights."

In Johnson v. Zerbst, 304 U.S. 458, 58 S. Ct. 1019, 82 L.Ed. 1461 (1938), which involved a federal habeas corpus attack on a conviction obtained against a defendant who did not have counsel during his trial, the Court noted that "[a] waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege," 304 U.S. at 464, 58 S.Ct. at 1023, 82 L.Ed. at 1466, and held that the right had not been effectively waived by the defendant.

However, while the above cases are instructive on waiver generally, none of them deals with the precise case now before us: a purported waiver made by an attorney acting on behalf of his client. The Supreme Court touched on this problem in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). In that case, a federal habeas corpus action was brought by Noia, a state criminal defendant who had been convicted 20 years earlier of murder on evidence which was now admittedly constitutionally defective. Noia and two codefendants had received terms of life imprisonment. Both codefendants appealed, risking retrial and thus a death sentence, and although unsuccessful on appeal, this action was later found to exhaust state remedies and one codefendant was allowed to bring an action for federal habeas corpus. He was successful in this action. Noia, however, was precluded by the federal district court from bringing federal habeas corpus on the ground that in failing to appeal, he had not exhausted his state remedies.[9] In failing to appeal, he had waived his right to seek vindication of his federal rights in state courts. Since the time for appeal had long since passed, Noia was effectively barred from seeking federal habeas corpus. Noia's response was that on appeal he would have risked the death pen-

---

7. The sixth amendment to the federal constitution provides in part:
   In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *.
   Article I, section 11 of the Alaska constitution provides in part:

   The accused is entitled * * * to be confronted with the witnesses against him. * * *

8. See Hammonds v. State, 442 P.2d 39, 42 (Alaska 1968).

9. U.S. ex rel Noia v. Fay, 183 F.Supp. 222 (S.D.N.Y.1960).

alty. This action, he argued, could not be considered a waiver of his rights. The Supreme Court agreed.

In addition, the Court felt the need to set a standard to govern the situation where, for "strategic" or "tactical" reasons, a defendant or his counsel might deliberately bypass a state procedure and later seek federal habeas corpus relief. On the issue of whether counsel could effectively waive the right, the Court said:

> The classic definition of waiver enunciated in Johnson v. Zerbst [citation omitted]—"an intentional relinquishment or abandonment of a known right or privilege"—furnishes the controlling standard. If a habeas applicant, *after consultation with competent counsel or otherwise*, understandingly and knowingly [waived his rights], then it is open to the federal courts on habeas to deny him all relief. * * * At all events we wish it clearly understood that *the standard here put forth depends on the considered choice of the petitioner*. [Citations omitted] A choice made by counsel not participated in by the petitioner does not automatically bar relief.

372 U.S. at 439, 83 S.Ct. at 849, 9 L.Ed.2d at 869 (emphasis added). The implication is quite strong that, as between the attorney and the client, the client must understandingly and knowingly waive the right involved.

But in Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), the Court seemed to draw back from the broad language of *Fay*. *Henry* more directly involved the question whether counsel's waiver of constitutional rights would later be deemed effective to bar habeas relief. There, the Court said:

> Although trial strategy adopted by counsel without prior consultation with an accused will not, where the circumstances are exceptional, preclude the accused from asserting constitutional claims [citations omitted], we think that the deliberate bypassing by counsel of the contemporaneous-objection rule as a part of trial strategy would have that effect in this case.

379 U.S. at 451–452, 85 S.Ct. at 569, 13 L. Ed.2d at 415.

There has been scant elaboration[10] since *Henry* of what constitutes "exceptional circumstances". Thus it is not clear whether[11] or to what extent[12] *Henry* should be taken to overrule, at least implicitly, so much of Fay v. Noia which requires that waiver of any fundamental constitutional right be "the considered choice of the petitioner". It has been argued that

> [w]hile Fay advances the proposition that defendant must participate in the decision in order to be bound by the waiver, no court could possibly take this as a universally applicable requirement.

10. Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966) involved defense counsel's agreement to a procedure whereby the state had to make only a prima facie showing of guilt for conviction. Since the client specifically stated before trial that he was not pleading guilty, and since the procedure described was tantamount to the entry of a guilty plea in that it shut off defendant's right to cross-examine the witnesses against him or call his own witnesses, the Court concluded that the conviction must be reversed. There was, however, no elaboration of the exceptional circumstances doctrine; indeed, the Court bypassed the opportunity to declare that the circumstances described above were exceptional. *Id.* at 7–8, 86 S.Ct. 1245, 16 L.Ed.2d at 319.

11. Shortly after *Henry* was decided, the Fourth Circuit stated:
> The discussion in *Henry* is simply an application of the waiver principle delineated in Fay v. Noia, and does not purport to alter that standard in any way.
Ledbetter v. Warden, 368 F.2d 490, 494 (4th Cir. 1966). *But see* note 12 *infra*.

12. We think that Henry limits Fay v. Noia at least to this extent—that it stands for the proposition that counsel's decision, although made "without prior consultation with an accused," to bypass the contemporaneous-objection rule as part of trial strategy, will nevertheless "preclude the accused from asserting constitutional claims" * * * Nelson v. California, 346 F.2d 73, 81 (9th Cir. 1965).

There are too many decisions, such as the method of cross examination, which must be left to counsel. Therefore, the Fay holding on this point must be limited to the specific decision of whether or not to waive basic procedural rights, such as the appellate process * * *.

Comment, Criminal Waiver: The Requirements of Personal Participation, Competence and Legitimate State Interest, 54 Calif.L.Rev. 1262, 1266–67 (1966).

After *Fay* and *Henry*, then, there is some uncertainty as to when an attorney's waiver of his client's rights without his client's consent will be found binding on the client. As a minimum proposition, the federal constitution requires that in "exceptional circumstances" a client is not bound by a waiver of his rights by his attorney without his consent, but he will be so bound if there are no exceptional circumstances.[13]

In defining the scope of constitutional protections which shall be afforded in Alaska courts, we are not limited to the minimum constitutional guarantees as enunciated by the United States Supreme Court. In appropriate circumstances we may more broadly define the rights of litigants.[14] We need to inquire whether this is such an occasion.

At the outset, the issue must be identified clearly. It is whether an attorney, charged with the responsibility of representing his client to the best of his ability, should be allowed to waive his client's constitutional rights without consulting his client or obtaining his acquiescence in the waiver. The issue presents a conflict of strong values.

On the one hand, the client has an undeniable interest in securing the protections guaranteed by the federal and state constitutions. These protections belong to the client—in the words of the constitution, to "the accused"—not to the attorney. They are meant to insure that the accused will receive a fair trial. This interest is extremely strong, as decisions of the United States Supreme Court and this court have made clear. *See, e. g.,* Powell v. Alabama, 287 U.S. 45, 58 S.Ct. 55, 77 L.Ed. 158 (1932).

But the countervailing considerations are weighty, too. First, the attorney acts on behalf of his client, and his actions are calculated to achieve the result which his client seeks. The attorney, moreover, is the expert—not the client. Short of outright incompetence, the attorney's actions must be considered as being in the best interests of his client. Furthermore, there is no constitutional command that constitutional rights be exercised by those who hold them. We can perceive of situations when the nonexercise of a right would be more beneficial to one's case than its exercise. Thus, in some situations an attorney's waiver of a right may be in the best interests of his client, and the client's nonexercise of the right is not constitutionally prohibited.

Second, there is a strong interest in promoting the efficient administration of justice. Any rule of law which would operate to frustrate this policy would be a dis-

---

13. A second limitation on counsel's power to waive his client's rights without consent has been developed in state courts and the lower federal courts: A client will not be bound by his counsel's actions when "counsel's lack of diligence or competence reduced the trial to a 'farce or a sham'." People v. Ibarra, 386 P.2d 487, 491, 34 Cal.Rptr. 863 (1963). *See, also* United States v. Pisciotta, 199 F.2d 603, 607 (2d Cir. 1952).

Since there is no suggestion in the present case that counsel's actions were incompetent, much less that the trial was reduced to a farce or a sham, we do not consider this developing sixth amendment doctrine further here.

14. *See, e. g.,* Whitton v. State, 479 P.2d 302, 309 (Alaska 1970) [double jeopardy]; Baker v. City of Fairbanks, 471 P.2d 386, 401–02 (Alaska 1970) [right to jury trial]; Roberts v. State, 458 P.2d 340, 342 (Alaska 1969) [right to counsel]; State v. Shelton, 368 P.2d 817, 818–19 (Alaska 1962) [sufficiency of grand jury indictment].

service to the courts, attorneys, and ultimately to the litigants—including criminal defendants—who appear in court. It might be feared that a rule requiring an attorney to consult with his client before the client's rights may be waived would unduly interfere with trials. Not only would it hamper the attorney, it might force the trial judge to interrupt the proceedings whenever a waiver might be occurring in order to protect the record on appeal. If the judge did not do so, the defendant could later challenge his conviction by asserting that he had not consented to the waiver. In addition, such a procedure would distract and confuse a jury. If carried far enough, it could not only slow a trial to a snail's pace, but it might also involve the judge in the conduct of the defense to an unacceptable degree.

We are not unaware of the dangers attendant upon resolution of the problem presented here. The constitutional rights of criminal defendants must be protected. Attorneys must be allowed to conduct trials as their training and experience dictate. And the processes of justice must be safeguarded against crippling delays and unwieldy procedures. We think the answer lies in a pragmatic approach.

Courts can most conveniently and carefully scrutinize waivers of constitutional rights which occur during the pre- and posttrial periods. During these periods, the arguments considered above which would allow a nonpersonal waiver (i. e., waiver by counsel) of fundamental rights do not apply with the force with which they apply during the trial. There is no jury present. Delay is less of a factor because of the less formal atmosphere of pretrial procedures, and because participation by the accused in pretrial decisions will not require that overall strategy be reformulated and steps already taken be retraced. The attorney is not hamstrung "during the heat of battle". Further, the attorney's role at trial changes, subtly yet undeniably, from what it was during pretrial. At trial he must be in active control of the defense. Before trial, and after, he may more properly serve as an advisor and counsellor. Consultation with the client is appropriate then. During the latter periods, too, there is more time for informing the client of choices open to him. And, if irreconcilable differences of opinion regarding strategy surface at such times, it is possible for the attorney to withdraw and for the client to seek new counsel without causing great waste of judicial resources. Such would not be the case at trial.

The distinction which we note between trial on the one hand and pre- and posttrial on the other, for purposes of deciding when an attorney must consult with his client before the client's constitutional rights may validly be waived, finds support in the cases.[15] We believe it also finds sup-

15. Although the test has not been articulated in such terms, the cases have often turned on whether the waiver occurred during the trial, or before or after it. The decision to plead guilty must be made by the client. Brookhart v. Janis, 384 U.S. 1, 7, 86 S.Ct. 1245, 16 L.Ed.2d 314, 319 (1966); United States v. Diggs, 304 F.2d 929 (6th Cir. 1962); In re Martinez, 52 Cal.2d 808, 345 P.2d 449 (Cal.1959). *See also* Fed.R.Crim.P. 11. Waiver of the right to a jury trial must be made by the client. United States ex rel. Goldsby v. Harpole, 263 F.2d 71 (5th Cir.), cert. denied, 361 U.S. 850, 80 S.Ct. 109, 4 L.Ed.2d 89 (1959). Waiver of the right to appeal must be made by the client. Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837, 869 (1963). Waiver of trial and submission of a case on the preliminary transcript must be made by the client. People v. Montoya, 235 Cal.App.2d 789, 45 Cal.Rptr. 572 (1965). *Contra,* Wilson v. Gray, 345 F.2d 282 (9th Cir.), cert. denied, 382 U.S. 919, 86 S.Ct. 288, 15 L.Ed.2d 234 (1965), rev'g Gray v. Wilson, 230 F.Supp. 860 (N.D.Cal.1964). All of these waivers occur before or after trial, or are the result of decisions made before trial.

On the other hand, waivers by counsel occurring at trial have generally been upheld. E. g., Nelson v. California, 346 F.2d 73, 81 (9th Cir. 1965).

It may be true that "[m]ost courts * * * have not distinguished between

port in reason and good judicial sense, and we adopt it for the courts of this state.

We hold that an attorney's waiver of his client's constitutional rights will be binding on the client—subject to established limitations[16]—when it occurs during the trial and results from decisions made during the trial.[17] Conversely, an attorney's waiver of his client's constitutional rights without his client's consent will not be binding on the client if the waiver occurs before or after the trial[18] or is the result of a decision made during the pretrial period.

Turning to the facts of this case, we are not persuaded that reversal of the superior court's action is warranted under the rule announced here. The waiver of appellant's right of confrontation occurred at the trial and was the result of a decision made during the trial. There is no indication in the record that the waiver was considered before the trial began or that the decision to waive appellant's right of confrontation was made before trial. In such a case, unless "exceptional circumstances" are present, or the attorney's actions constituted incompetence which reduced the trial to a "farce or a sham", the client is bound by his attorney's waiver. We find that no "exceptional circumstances" and no attorney incompetence appear from the record.

There is a second reason why appellant is not entitled to relief on this claim. A close reading of the facts indicates that his right of confrontation was in no realistic sense denied to or lost by him.

Appellant was charged with 60 separate counts of false representation in soliciting for organizations. The defense apparently employed two not entirely consistent theories: (1) that solicitation had indeed taken place, but that it was pursuant to a valid fund-raising contract between appellant and a local Boys' Club; and (2) that there were few, if any, witnesses who could actually tie defendant in with the contributions they had made in response to solicitations they had received. The right of confrontation is considered in light of both theories.

In regard to the first theory, the only witnesses testifying against appellant—i. e., those who were testifying adversely to the theory that a valid contract was still in effect—were those testifying that the contract had been terminated. These witnesses were intensely and, we think, effectively cross-examined by appellant's counsel.

In regard to the second theory, the testimony of every one of the state's witnesses would have been essentially identical—that they had received telephone solicitations, that they had made contributions in response to it, and that they could not identify the defendant as either the person who had telephoned or who had picked up the contributions.

pre-trial and trial waivers in requiring the accused's personal participation." Comment, Criminal Waiver: The Requirements of Personal Participation, Competence and Legitimate State Interest, 54 Calif.L.Rev. 1262, 1272 (1966). Nonetheless, we believe that in this regard the actions of the courts are a better guide to understanding than the tests they have articulated.

16. A waiver will not be binding in exceptional circumstances. Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965). See text at note 13 supra. A waiver will not be binding if it denies the client "effective representation" of counsel. Cf. Powell v. Alabama, 287 U.S. 45, 58 S.Ct. 55, 77 L.Ed. 158 (1932). See White v. State, 457 P.2d 650, 653 (Alaska 1969); cases cited note 13 supra. See generally Alaska Crim.R. 47(b).

17. For purposes of the rule announced here, and in keeping with its pragmatic approach, we treat preliminary hearings, suppression hearings and other such trial-type proceedings as if they were the trial itself. Thus, tactical decisions to waive constitutional rights made during the course of such proceedings will be binding on the client.

18. Cf. McCracken v. State, 482 P.2d 269 (Alaska 1971). See generally Gibbons, Waiver: The Quest for Functional Limitations on Habeas Corpus Jurisdiction, 2 Seton Hall L.Rev. 291, 301 (1971).

The state put on four witnesses who testified along these lines. These witnesses, with one exception, were questioned by appellant's counsel, and in every case he elicited the crucial information that they did not know who had called them and that they could not identify the defendant as the person who had picked up their contributions. These points were agreed to by the state in the stipulation between the district attorney and appellant's trial counsel regarding the witnesses who were not called.

The right of confrontation was meant to protect the defendant's interest in being able to test, by cross-examination, the testimony of those appearing against him. This interest was fully protected, both in the examination of the witnesses who did take the stand, and in that part of the stipulation which recited that if an additional 52 witnesses had taken the stand they would have testified that they did not recognize appellant as the telephone caller and could not identify him as the one who collected the money. In these circumstances, we can perceive no violation of defendant's constitutional right to confront the witnesses against him.

*Cruel and Unusual Punishment*

Appellant's second point on this appeal is that his sentence constituted cruel and unusual punishment. Before reaching the merits of this argument, it is necessary to consider the state's contention that appellant is precluded from raising this issue because of his failure to raise it on his appeal.

The issue is governed by Criminal Rule 35 which specifies the scope of post-conviction relief in Alaska. Subdivision (b) of that rule provides in relevant part:

Any person who has been * * * sentenced for a crime and who claims * * * that the * * * sentence was in violation of the constitution of the United States or the constitution or laws of Alaska * * * may institute a proceeding under this rule to secure relief.

Appellant's contention that his sentence constitutes cruel and unusual punishment clearly falls within the scope of this rule, since such a sentence would be in violation of the federal and state constitutions if cruel and unusual punishment were imposed.[19]

The state argues that the application for post-conviction relief is precluded by Criminal Rule 35(i). That rule provides:

All grounds for relief available to an applicant under this rule must be raised in his original, supplemental or amended application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended application.

The state argues, in effect, that appellant's cruel and unusual punishment claim is a "ground * * * waived in [a] proceeding the applicant has taken to secure relief"—in other words, the appeal—and therefore may not be the basis for a "subsequent application", such as the post-conviction relief proceeding we are considering here.

The first sentence of Rule 35(i) makes it clear that a person in appellant's position —one sentenced for a crime—must assert in his original, supplemental or amended application for post-conviction relief all

---

19. The eighth amendment to the federal constitution provides:

Excessive bails shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

Article I, section 12 of the Alaska constitution provides:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted. Penal administration shall be based on the principle of reformation and upon the need for protecting the public.

grounds for relief that are available. The second sentence emphasizes this aspect by providing that if all such grounds are not raised in the first application, they may not be the basis for a subsequent application for relief under the rule.

We need not be concerned with this aspect of the rule, because the proceeding we are now considering is appellant's first or original application for post-conviction relief under Criminal Rule 35. There simply is no "subsequent application" brought under that rule to be concerned about. As far as this facet of the rule is concerned, appellant is not barred in this original application for post-conviction relief from raising the issue of whether his sentence violates constitutional standards relating to cruel and unusual punishment.

The state argues, however, that even though this is appellant's first post-conviction relief application under Criminal Rule 35, it is in essence an application subsequent to the earlier appeal, and thus is barred under Rule 35(i). Where an appeal can be characterized as a first application for post-conviction relief, then the second sentence of Rule 35(i) is governing. It provides:

> Any ground * * * knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief may not be the basis for a subsequent application. * * *

The question involved here is whether appellant's failure to raise the constitutional issue of cruel and unusual punishment on appeal from his conviction amounted to a knowing, voluntary and intelligent waiver of that point. If it did, then he may not raise the point in this post-conviction relief application. But if there were not such a waiver, the words "may not be the basis for a subsequent application" in Rule 35(i) have no application, and appellant has the right to have that issue determined in this proceeding.

■ There is nothing in the record, either of the original appeal or in this post-conviction proceeding, that indicates a waiver, other than appellant's failure to mention the point on appeal. This is not sufficient to demonstrate that the right to challenge the sentence as being cruel and unusual punishment was "knowingly, intelligently and voluntarily waived".

■ We are unable to say that the sentence imposed violated appellant's constitutional right. The test is whether the punishment is

> inhuman and barbarous, or so disproportionate to the offense committed as to be completely arbitrary and shocking to the sense of justice. * * *[20]

Appellant's sentence of five years imprisonment, and a fine of $6,000, was upon conviction on 60 separate counts of fraudulent solicitations.[21] These activities occurred over approximately two years, and netted appellant between $8,000 and $13,000.[22] In light of these facts, we believe the sentence is not "so disproportionate to the offense committed as to be completely arbitrary and shocking."[23]

20. Green v. State, 390 P.2d 433, 435 (Alaska 1964). See also Marrone v. State, 458 P.2d 736, 740–41 (Alaska 1969); Faulkner v. State, 445 P.2d 815, 817, 819 (Alaska 1968).

21. Consecutive sentences are authorized by AS 11.05.050, which reads in relevant part:

> If the defendant is convicted of two or more crimes, before judgment on either, the judgment may be that the imprisonment upon one conviction begins at the expiration of the imprisonment for any other of the crimes.

22. The exact amount is unclear. At sentencing, the trial judge said the evidence indicated that appellant received about $13,000. On appeal, we commented that appellant had obtained at least $8,000. 448 P.2d 587, 594 n. 15 (Alaska 1968).

23. Green v. State, 390 P.2d 433, 435 (Alaska 1964). See also Marrone v. State, 458 P.2d 736, 740–41 (Alaska 1969); Faulkner v. State, 445 P.2d 815, 817, 819 (Alaska 1968).

Appellant seems to advance the argument that the imposition of consecutive sentences amounted to a constitutional violation where the transactions were "similar" and the activity was "common". This misreads our decision in State v. Pete, 420 P.2d 338 (Alaska 1966). *Pete* involved conviction and consecutive sentences for two unlawful sales of intoxicating liquor to the same person on the same day. We found there that the two offenses were "really part of one general transaction involving the unlawful sale of liquor",[24] and accordingly modified the judgment and sentence. In the present case the criminal activity continued for almost two years and involved many different victims. There was no "one general transaction". At most, appellant can be said to have employed the same *modus operandi* for each of his crimes. This does not furnish him a defense to separate convictions for each crime.

The judgment is affirmed.

24. 420 P.2d at 342.